B. & I. Q. AYMAR *vs.* SHELDON and others.

The *endorsee* of a bill of exchange, payable a certain number of days after
sight, drawn in a *French West India Island*, on a mercantile house in *Bordeaux*, and transferred *in the city of New York* by the *payee*, need not present the bill for payment after *protest for non-acceptance*, notwithstanding
that by the French *code de commerce* the holder is not excused the protest
for non-payment by the protest for non-acceptance; and loses all claim against the endorser, if the bill be not presented for protest of non-payment.
In such case the *payee* of the bill is bound to conform to the *French law* in
respect to bills of exchange, to enforce his remedies against the drawers;
but not so the *endorsee*, he is only required to comply with the law merchant
prevailing here, the endorsement having been made in the city of New York;
and according to which his right of action is perfect, after protest for non-acceptance.
If the holder of a bill, subject to certain duties and obligations in reference to
the law of the place where the bill is drawn or is made payable, wishes to
impose the same obligations upon his *endorsee*, it behooves him to make a
*special endorsement*, or the endorsee will incur no other obligations than
what are imposed by the law merchant of the place where the endorsement
is made.

ERROR from the superior court of the city of New York.
Sheldon and others, as *endorsees*, brought a suit against B. & I,
Q. Aymar, as *endorsers* of a bill of exchange, bearing date 4th
June, 1830, drawn by V. Cassaigne & Co. *St. Pierre, at Martinique*, on L'Hotelier Freres, at *Bordeaux* in *France*, for 4000
francs, payable at 24 days sight, to the order of *B. Aymar &
Co.*, the name of the firm of B. & I. Q. Aymar. The plaintiffs set forth the *endorsement* of the bill of exchange *at the city
of New York*, where, they averred, that they and the defendants, all being citizens of the United States at the time of
the endorsement, respectively dwelt and had their homes;
and then aver that on the 11th August, 1830, the bill of exchange was presented to L'Hotelier Freres, at Bordeaux for acceptance, according to the custom of merchants, and that they
*refused to accept;* whereupon the bill was duly protested for
non-acceptance, and notice given to the defendants. The
defendant pleaded, 1. *Non assumpsit;* 2. That the bill declared on was made and drawn in the island of Martinique, a

country then, since and now, under the dominion and govern-
ment of the king of France, by persons there dwelling sub-
jects of the king of France ; and that the bill, according to its
tenor was payable at Paris in the kingdom of France, by per-
sons then and still residing and dwelling at Bordeaux, in the
kingdom of France, subjects of the king of France, to wit, on,
&c. at, &c. ; that the island of Martinique, as well as Paris
and Bordeaux, and the persons therein respectively residing,
and the *drawers* and *drawees* were subject and governed by the
laws of the kingdom of France, there and then, and still ex-
·isting and in force, to wit, on, &c. at, &c. ; *that by the laws of
France*, then and still at the several places in the plea men-
tioned, existing and in force, *it is established, enacted and pro-
vided*, in relation to bills of exchange drawn and payable in
the countries subject to the laws of France, among other
things, in manner and form following, namely : The drawer
and endorsers of a bill of exchange are severally liable for its
acceptance and payment at the time it falls due. *Code de
Commerce*, 119. The refusal of acceptance is evidenced by
an act denominated protest for non-acceptance. id. 120. On
notice of the protest for *non-acceptance*, the endorsers and
drawer are respectively bound to give security, to secure the
payment of the bill at the time it falls due, or to effect reim-
bursement of it, with the expense of protest and re-exchange.
The time when a bill of exchange becomes due, if payable at
one or more days after sight, is fixed by the date of the ac-
ceptance, or *by the date of the protest for non-acceptance.* The
holder is *not excused the protest for non-payment* by the protest
for non-acceptance. After the expiration of the above periods,
(certain periods specified in the code, and which, in the case
of a bill drawn in the *West-Indies* on *France*, is one year,) for
the presentment of bills at sight, or one or more days after
sight, for protest of non-payment, *the holder of the bill loses all
his claim against the endorsers*, &c. setting forth, besides the
above, a variety of other provisions of the French code, rela-
tive to bills of exchange, and then averring, that although at
the time of the commencement of the action of the plaintiffs,
*twenty-four days after sight* of the bill of exchange declared on
*had elapsed*, from the day when the same was alleged to have

been protested for non-acceptance, *yet no protest of the said bill for non-paymeut had been made,* concluding with a verification and prayer of judgment. 3. The defendants pleaded, after referring to the matter of inducement stated in the second plea, that on notice of protest for non-acceptance, as alleged in the declaration, they were ready and willing to give security ; and *offered to the plaintiffs to give security,* according to the true intent and meaning of the laws of France, to secure payment of the bill at the time when the same should fall due, to wit, on, &c. at, &c., concluding as in last plea. To the *second* plea the plaintiffs *demurred,* and took issue upon the *third,* denying that the defendants did offer security, &c.

ALBANY,
Oct. 1834.

Aymar
v.
Sheldon.

The superior court, on the argument of the demurrer, adjudged the second plea to be *bad ;* after which the issues of fact were tried. The jury found for the plaintiffs, on the plea of *non-assumpsit,* and assessed their damages at $895,52, and found a verdict for the defendants on the third plea. Notwithstanding wh'ch last finding, the court gave judgment for the plaintiffs on the whole record. The defendants sued out a writ of error.

*D. Lord, jun.* for plaintiffs in error.

*D. D. Field & R. Sedgwick,* for defendants in error.*

---

* The counsel for the plaintiffs below, in support of the proposition for which they contended, that even according to the law on this subject, as understood in France, the action was maintainable, read from Henry on Foreign Laws, p. 220, app. the following extract from Pardessus, part 6, tit. 8, ch. 1 :

" It must be remembered, that frequently a credit, for example a bill of exchange, is the object of successive contracts, such as the acceptance, negotiation by endorsement, &c. Each of these negotiations, independent of the principal act, has been made in the particular place where the act was done, and it is by the law of this place respectively, that each act should be decided."

Again, page 244 ; " It may be urged, but without foundation, that the person in whose favor a bill has been drawn, can have no other rights than those given by the law of the place where the bill was made ; that he can endorse the bill upon no other condition, and so with subsequent endorsers, because no one can give a right beyond what he possesses ; and that it is always to

*By the Court,* NELSON J. The only material question arising in this case is, whether the steps necessary on the part of the holders of the bill of exchange in question, to subject the endorsers upon default of the drawees to accept, must be determined by the French law, or the law of this state? If by our law, the plaintiffs below are entitled to retain the judgment; if by the law of France, as set out and admitted in the pleadings, the judgment must be reversed.

We have not been referred to any case, nor have any been found in our researches, in which the point now presented has been examined or adjudged. But there are some familiar principles belonging to the law merchant, or applicable to bills of exchange and promissory notes, which we think are decisive of it. The persons in whose favor the bill was drawn were bound to present it for acceptance and for payment, according to the law of France, as it was drawn and payable in French territories; and if the rules of law governing them were applicable to the endorsers and endorsees in this case, the recovery below could not be sustained, because presentment for payment would have been essential even after pro-

---

the law of the country where the bill has been drawn, that we must defer, in judging on the actions of the different endorsers against each other. * * * " But this is only true so far as regards the principal obligation, and is not applicable to the different contracts of cession by endorsements, of which this obligation is the subject. Each of these contracts, though entirely referring, in respect to the right or thing ceded, to a primitive contract, is nevertheless in itself a particular and independent contract. * * * "There is nothing to compel the contracting parties to uniformity, with respect to the extent of the quantity arising from the contract. * * " It results, without doubt, from these principles, that an endorser will be bound to guarantee the payment, after a protest, not made within the term required by law; * * * " if such be the law of the place where he made the endorsement, although the law of the place where the bill was endorsed to him does not afford him a similar resource against his endorsers. It is the result of the diversity of the contracts. It happens daily, that a man who has purchased without a warranty, resells with a warranty, and the vendee has against him actions which he cannot exercise against his vendor; of which he has no reason to complain. It is the same with the different endorsements of a bill of exchange, made in places where the laws vary in this respect, as each endorsement imposes on the endorsers obligations of guaranty, more or less extensive, according to the law of the place of cession or endorsement.

test for non-acceptance. No principle, however, seems more fully settled, or better understood in commercial law, than that the contract of the endorser is a new and independent contract, and that the extent of his obligations is determined by it. The transfer by *endorsement* is equivalent in effect to the *drawing* of a bill, the endorser being in almost every respect considered as a new drawer. Chitty on Bills, 142. 3 East, 482. 2 Burr. 674, 5. 1 Str. 441. Selw. N. P. 256. On this ground, the rate of damages in an action against the endorser is governed by the law of the place where the endorsement is made, being regulated by the *lex loci contractus.* 6 Cranch, 21. 2 Kent's Comm. 460. 4 Johns. R. 119. That the nature and extent of the liabilities of the drawer or endorser are to be determined according to the law of the place where the bill is drawn or endorsement made, has been adjudged both here and in England. In *Hix* v. *Brown,* 12 Johns, R. 142, the bill was drawn by the defendant, at New-Orleans, in favor of the plaintiff, upon a house in Philadelphia ; it was protested for non-acceptance, and due notice given : the defendant obtained a discharge under the insolvent laws of New-Orleans after such notice, by which he was exonerated from all debts previously contracted, and in that state, of course from the bill in question. He pleaded his discharge here, and the court say, " it seems to be well settled, both in our own and in the English courts, that the discharge is to operate according to the *lex loci* upon the contract where it was made or to be executed. The contract in this case originated in New-Orleans, and had it not been for the circumstance of the bill being drawn upon a person in another state, there could be no doubt but the discharge would reach this contract ; and this circumstance can make no difference, as the demand is against the defendant as drawer of the bill, in consequence of the non-acceptance. The whole contract or responsibility of the drawer was entered into and incurred in New-Orleans. The case of *Peters* v. *Brown,* 5 East, 124, contains a similar principle. See also 3 Mass. R. 81 ; *Van Raugh* v. *Van Arsdaln,* 3 Caines, 154 ; 1 Cowen, 107 ; 6 Cranch, 221 ; 4 Cowen, 512, n.

ALBANY,
Oct. 1834.

Aymar
v.
Sheldon.

The contract of endorsement was made in this case, and the execution of it contemplated by the parties in this state ; and it is therefore to be construed according to the laws of New-York. The defendants below, by it, here engage that the drawees will accept and pay the bill on due presentment, or, in case of their default and notice, that they will pay it. All the cases which determine that the nature and extent of the obligation of the *drawer* are to be ascertained and settled according to the law of the place where the bill is drawn, are equally applicable to the *endorser ;* for, in respect to the holder, he is a drawer. Adopting this rule and construction, it follows that the law of New-York must settle the liability of the defendants below. The bill in this case is payable 24 days *after sight*, and must be presented for acceptance ; and it is well settled by our law, that the holder may have immediate recourse against the endorser for the default of the drawee in this respect. 3 Johns. R. 202. Chitty on Bills, 231, and cases there cited.

Upon the principle that the rights and obligations of the parties are to be determined by the law of the place to which they had reference in making the contract, there are some steps which the holder must take according to the law of the place on which the bill is drawn. It must be presented for payment when due, having regard to the number of days of grace there, as the drawee is under obligation to pay only according to such calculation ; and it is therefore to be presumed that the parties had reference to it. So the protest must be according to the same law which is not only convenient, but grows out of the necessity of the case. The notice however must be given according to the law of the place where the contract of the drawer or endorser, as the cause may be, was made, such being an implied condition. Chitty on Bills, 266, 93, 217. Bayley, 28. Story's Conflicts of Laws, 298.

The contract of the drawers in this case, according to the French law, was, that if the holder would present the bill for *acceptance* within one year from date, it being drawn in the West Indies, and it was not accepted, and was duly protested and notice given of the protest, he would give security to pay it, and pay the same if default was also made in the *payment*

by the drawee after protest and notice. This is the contract of the drawers, according to this law, and the counsel for the plaintiffs in error insists that it is also the implied contract of the endorser in this state. But this cannot be, unless the endorsement is deemed an adoption of the original contract of the drawers, to be regulated by the law governing the drawers, without regard to the place where the endorsement is made. We have seen that this is not so; that notice must be given according to the law of the place of endorsement; and if, according to it, notice of non-payment is not required, none of course is necessary to charge the endorser. But if the above position of the plaintiffs in error be correct, notice could not then be dispensed with, the law of the drawer controling. The above position of the counsel would also be irreconcileable with the principle, that the endorsement is equivalent to a new bill, drawn upon the same drawee; for then the rights and liabilities of the endorser must be governed by the law of the place of the contract, in like manner as those of the drawer are to be governed by the laws of the place where his contract was made. Both stand upon the same footing in this respect, each to be charged according to the laws of the country in which they were at the time of entering into their respective obligations.

I am aware that this conclusion may operate harshly upon the endorsers in this case, as they may not be enabled to have recourse over on the drawers. But this grows out of the peculiarity of the commercial code which France has seen fit to adopt for herself, materially differing from that known to the law merchant. We cannot break in upon the settled principles of our commercial law, to accommodate them to those of France or any other country. It would involve them in great confusion. The endorser, however, can always protect himself by special endorsement, requiring the holder to take the steps necessary according to the French law, to charge the drawer. It is the business of the holder, without such an endorsement, only to take such measures as are necessary to charge those to whom he intends to look for payment.

Judgment affirmed.