LOW (HILL v.). See Case No. 6,494.
LOW (PALMER v.). See Case No. 10,693.

---

[2] The case of Bryans v. Nix, 4 Mees. & W. 791. contains some remarks of Mr. Baron Parke, very strong to the point of this case when the property vested in Andrews.
[1] [Reported by John William Wallace, Esq.]

---

## Case No. 8,561.
### LOW v. UNDERHILL.
[2 West. Law J. 360; 3 McLean, 376.][1]

Circuit Court, D. Illinois. Dec. Term. 1844.

PRINCIPAL AND SURETY — INDORSER ON NEGOTIABLE PAPER—AGREEMENT NOT TO ENFORCE JUDGMENT AGAINST MAKER—RELEASE.

1. If the endorsee of a promissory note, who sues the maker and obtains a judgment, cause an execution to be issued and delivered to the sheriff to execute, and while the execution is in full life, agrees with the defendant in execution, that if he will pay $100 on the judgment, he will give him time on the balance,—the money being paid, it is founded on sufficient consideration to discharge the endorser.

2. The endorsee of a note may be passive, if he please, without risk. He may. after obtaining a judgment, decline issuing an execution; but if he causes an execution to be issued, he must do no positive act to stop its collection; and if an order be given to the sheriff not to levy, it is such an act as will discharge the endorser.

3. An agreement to give time that will discharge an endorser, must be founded on a valuable consideration; but the receiving of a part of the debt, coupled with an agreement to give time, is consideration sufficient, and will discharge the endorser.

[See Bank of U. S. v. Hatch, Case No. 918.]

4. The receiving of part payment from the maker, after the liability of the endorser is fixed. will not discharge the endorser, unless it be accompanied by some other act, impairing the rights of the holder against them, such as giving time.

5. If the endorsee of a note agrees with the maker that, if he will pay him a part. he will extend the time for the payment of the remainder. when the money is paid. the contract becomes an executed contract. and is obligatory. Aliter, if the contract is but executory.

This was an action of assumpsit, brought by the plaintiff [Daniel Low] as the endorsee of two promissory notes against the defendant [Isaac Underhill]. the endorser—one note for $762.37, made by Edward Dickinson to defendant, and dated May 5, 1836. at twelve months, and the other for $560. made by Luther Sears to defendant, and dated May 7, 1836. at twelve months, and both endorsed by the defendant to the plaintiff in the state of New York. The notes were made in Illinois. the makers and payee both residing there. The declaration averred that the notes were endorsed by the defendant to the plaintiff in the state of New York, and averred a demand of the maker and notice in the usual form. The defendant plead the general issue, and gave notice under the same of the special matter relied upon. The notice alleged, that after the notes became due, the plaintiff brought suit against the makers, recovered a judgment. caused an execution to be issued and delivered to the sheriff to execute; that after the issuing of the execution, and while they were in full life, the plaintiff, in consideration that the defendants in execution would pay to

[1] [3 McLean, 376, contains only a partial report.]

him one hundred dollars each on the said judgments, agreed that he would extend the time for the payment of the balance due upon the judgments, until the next fall succeeding the time of the payment of the money; that on the 18th day of August, 1839, the said defendants in execution paid to the plaintiff one hundred dollars each on the said judgments, and that in consideration of said sums of money, the said plaintiff agreed to extend the time for the payment of the balance due on said judgments until the next fall succeeding the said payment. And further, in consideration of the payment of said sums of money, the plaintiff further agreed to cause the executions to be returned without being levied upon the property of the said defendants in execution; that the executions were returned without being levied, and that at the time of this agreement, the said defendants in the executions had personal property in their possession sufficient to satisfy the same, and on which the executions would have been a lien, if they had not been returned, and a levy had been made; and alleging, that, in consequence of this agreement to extend the time, and to return the executions without being levied, the debt was lost. The proof fully maintained the defence set up in the notice, and THE COURT being of opinion that the defence was good, so instructed the jury; and a verdict was rendered in favor of the defendant. The plaintiff moved for a new trial.

The case was tried at the December term, 1843. and was continued under advisement till the December term, 1844.

S. Y. Logan and A. Lincoln, for plaintiff, made the following points: (1) An agreement to give time which will discharge an endorser, must be founded on a valuable consideration. [M'Lemore v..Powell] 12 Wheat. [25 U. S.] 554; Chit. Bills (10th Ed.) 413. (2) An agreement to give time, made upon receiving from the maker of a note a part of the sum due, is a nudum pactum; for, by paying a part, the maker of the note did no more than he was legally bound to do; and an agreement to give time by the holder of a note, on receiving part payment, has no consideration to support it, and will not discharge the endorser. Pabodie v. King, 12 Johns. 426; 5 Wend. 501.

E. N. Powell and Wm. F. Bryan, for defendant, made the following points: (1) If the holder of a note for a valuable consideration, agrees to give time to the maker, the endorser is thereby discharged. M'Lemore v. Powell, 12 Wheat. [25 U. S.] 554; Bank of U. S. v. Hatch, 6 Pet. [31 U. S.] 250; Wood v. Jefferson County Bank, 9 Cow. 194; Chit. Bills, 408–423; Story. Bills, p. 490, § 425, note 2; Philpot v. Briant, 4 Bing. 717: Gould v. Robson, 8 East, 576; 4 Miller, 294; English v. Darley. 2 Bos. & P. 61; Hubbly v. Brown, 16 Johns. 70; Story,

Bills, p. 512, § 436. (2) An agreement, in consideration of part payment by the maker, to extend the time of the payment of the balance, for a specified time, is binding upon the holder, and discharges all other parties. Gould v. Robson,. 8 East, 576; English v. Darley, 2 Bos. & P. 61; Walwyn v. St. Quintin, 1 Bos. & P. 652; Clark v. Devlin, 3 Bos. & P. 365. (3) Although the receipt of part payment by the holder from the maker or acceptor, will not per se discharge the endorser; yet, if it be coupled with an agreement to give time for the remainder, the endorser will be discharged. Chit. Bills (10th Ed.) 418; Story, Bills, p. 512, § 436; English v. Darley, 2 Bos. & P. 61. The case in 2 Bos. & P. is a case directly in point. In that case the endorsee had prosecuted the acceptor to judgment, and took out execution, and then received of the defendant £100 in part payment. and took his bond and warrant for the remainder as a security. but received no additional security, and it was held that it discharged the endorser.

POPE, District Judge. The defence is, that the plaintiff, having obtained judgment against the makers of the notes sued on. and caused execution to be issued and placed in the hands of the sheriff for collection, agreed, that if the defendants would pay one hundred dollars each on the judgments, he would cause the executions to be returned without being levied, and would wait before further action for a certain length of time then agreed upon. The money was paid, the executions returned without being levied, and the delay granted. The plaintiff contends that the promise was void, because not upon a valuable consideration, the payment being no more than their duty, and what they had previously promised to do. The authorities all establish the position, that the promise to extend the time of payment must be on a valuable consideration to discharge the endorser. The cases adjudged are so various and numerous. and so is the application of the principle to many cases, where the shades of difference are very slight, that each case seems at last to have been more influenced by its own intrinsic merits, than by rigidly adhering to the rule.

The position of the plaintiff is, that no one can create a binding obligation to another by discharging a duty. Is this universally true in its application to society? It is man's duty to feed the hungry and clothe the naked; and it will not be denied that he might demand remuneration. These, it will be said, are not perfect obligations. This is true: still the moral obligation is the same as in the case of perfect obligations, which I define to be those enforced by law. The contract in this case is of the latter class, and involves the moral obligation to fulfil his promise, together with the prudential one as affecting his character for punctuality in the performance of his engagements—very im-

portant to him as a man of business, particularly as a merchant. But there is still another—the legal obligation to which the parties look in the last resort. The debtor is morally bound to make reasonable exertions to pay his debts, but not at a ruinous sacrifice. He is not bound to sacrifice property at one tenth or twentieth of its value, to raise the money; and as both parties, at the time of contracting, looked to the courts as open to the creditor for the application of coercive action, the conscience of the debtor is quieted, when he has made every effort which a reasonable man could ask. The contract is violated, the promise not kept. The creditor has taken the matter in hand, and is pursuing the property of the debtor through the courts of law. How stands the moral obligation now? Will it be matter of reproach to the debtor, that he relaxes, and leaves the creditor to pursue his remedy? Judgment is obtained, and execution in the hands of the officer. The creditor, at this stage of the proceedings, says to the debtor, "if you will pay me now a part, I will not levy on your property, will stop the execution, and give further time for the payment of the remainder." The money is paid. no levy is made, execution returned, and delay granted. Can it be said that this contract was not obligatory? Various reasons might be suggested as benefits to the creditor in this arrangement, as that he might expect great gain from the immediate use of the money stipulated to be paid. It may be imagined that he might have a valuable property subject to forfeiture for want of that sum, before the money could be made on the executions; or he might be unwilling to trust it in the hands of the sheriff. The arrangement itself implies that he expected to profit by it. Again, the defendant might deem it for his interest to sacrifice a portion of his property to obtain the indulgence. Gain to one party, or loss to the other, is a sufficient consideration. The contract was an executed contract, when the money was paid, and the execution was returned. In such cases, the consideration is good, but not where the contract is executory: as, if A agrees to accept a part of the debt in full payment. This agreement is not binding. for want of consideration. But if the money be paid and accepted in pursuance of the agreement, it is binding. Lynn v. Bruce, 2 H. Bl. 317; 2 Term R. 24. Again, in Story, Bills, p. 512, § 436, and in Chit. Bills, 418, it is laid down, that the receiving of part payment from one of the parties, after liability of all is fixed, does not discharge the other parties, unless it be accompanied by some other act impairing the rights of the holder against them—such as giving time, &c. This is the present case. If the plaintiff had promised to give time. upon the promise of the defendant to pay a part, he would not be bound by the agreement for want of consideration, as he had in the new promise no

more than the defendant had already promised.

It is well settled, that the endorsee may sue both the drawer and endorser, or either, at his option. If he sues the drawer alone, it implies that he deems him solvent; for if he did not think so, why did he select him in preference to the endorser? This has a tendency to lull the endorser into a false security; therefore the plaintiff should in good faith prosecute his suit, and do no act to the injury of the endorser. But the suit is prosecuted to judgment; the liability of the drawer on the note is merged in the judgment, and the note, as to him, is extinguished, and no longer under the control of either party. Suppose the endorser had offered to pay the money to the endorsee, the latter was bound to surrender the note. This he could not do, (at least without the leave of court,) which might be attended with delay, or the endorsee would be entitled to the control of the judgment. This he could not have without the warrant of the plaintiff; this he could not give without a gross violation of faith and confidence between man and man. Lord Eldon, in the case of English v. Darley, 2 Bos. & P. 61, says: "If a holder enter into an agreement with a prior endorser, in the morning, not to sue him for a certain period of time, and then obliges a subsequent endorser in the evening to pay the debt, the latter must immediately resort to the very person for payment to whom the holder has pledged his faith that he shall not be sued." Suppose there had been no third party in this case, what would be said of the plaintiff, if he had immediately gone on with the executions, and made a levy and sale of the property of the defendants. What would be the judgment of mankind upon it? Most unqualified condemnation for violated faith. I know of no system of morality or ethics, that would screen him from the contempt of mankind; nor can I think that a judge can be required by law to spread a mantle over such treachery. This case has so far been considered on the concession, that the liability and responsibility of ·the maker and endorser are identical. But ·this is not so. Of late years a case arose in England, where the court of common pleas decided one way, and the court of king's bench the ·reverse. It was this A gave his note for the payment of money at ·a particular place. The question was, whether the plaintiff was bound to allege in his declaration. and prove on the trial a demand at the place. The same question came before the supreme court of the United States, whose decision was, that if the suit were against the maker, no demand at the place was necessary, but if against the endorser. it was necessary, upon the ground that the endorser had not promised to place the money himself, but that the maker would. This decision to some extent has thrown overboard many dicta that every

endorser is a new drawer. See Bank of U. S. v. Smith, 11 Wheat. [24 U. S.] 171.

In the present case, inasmuch as the liability of the endorser as well as the maker was fixed, and the holder had the right to sue either or both, his suing the maker alone, and afterwards giving time after judgment, it is fair to presume that he was solvent, (independent of the testimony on that point,) and the endorser had a right to expect that the money would be made of the maker. He could not expect that the plaintiff would have granted time, if he had doubts of the ability of the defendants to pay. The holder may be passive if he pleases, without risk of discharging the endorser. He may decline to issue an execution, but he must do no positive act to stop the collection. The order to the sheriff not to levy, and to return the execution, is such an act as will discharge the endorser. This is a motion for a new trial, which is always addressed to the discretion of the court. In this case it seems that one of two innocent parties must suffer. If the plaintiff, after suing the makers, had done no act to obstruct or postpone the recovery of the money, the defendant could have had no pretence to exemption from liability. But, as the plaintiff did interfere to stop the execution, he ought to take the consequences. The defendant owed it to himself to know, that the execution was issued; but when issued by the plaintiff, and under his control, a disposition was thereby manifested to pursue the legal remedies against the makers; and he was satisfied with it, or he would have sued the endorser simultaneously with the makers. In this state of the case, the endorser could not have expected that the plaintiff would stop the execution, but the reverse, and therefore might not deem it important to inquire, or provide for such a step. And it was fully established by the evidence, that the makers, at the time of the agreement made to return the execution, had personal property sufficient to satisfy the debt, and on which the executions were a lien. I am therefore clearly of opinion, that the law and the justice of the case are with the defendant, and the motion for a new trial must be refused. Motion for new trial refused.

NOTE. By the laws of Illinois, the endorser of a note can only be made liable on his endorsement, by the institution and prosecution of a suit against the maker, at the first term of court after the note becomes due—unless the maker had left the state, or that the institution and prosecution of a suit would have been wholly unavailing. In the foregoing case, although the notes sued on were made in Illinois, the makers, payee, and the endorser residing there, yet they were endorsed by the defendant in New York; and the endorsement being a new and substantive contract, had to be governed by the law of the place of endorsement. This principle of the law seems to be so well settled, that it was not made a point in the case. Vide Story, Confl. Law, 260, 262; 12 Johns. 142; 12 Wend. 439; 2 Scam. 465; 6 Cranch, 221. The declaration averred that the notes were endorsed in New York, and a demand and notice, and that by the laws of New York endorsers are liable as by the law merchant, so that the case was governed solely by the lex mercatoria.