### CHARLES CONAHAN v. ADOLPHUS H. SMITH.

#### (No. 2,716.)

1. When a promissory note is made and indorsed in Kentucky, though payable in Ohio, the liabilities of the indorser are fixed by the law of the former State; and, the laws of that State providing, that, before any indorser can be made liable, except on negotiable notes made payable at and discounted by an incorporated bank within the State, the maker of the note must be first prosecuted to insolvency, by judgment and execution, no recovery can be had in this State, against the indorser, without proof that such preliminary conditions had been complied with.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered against the plaintiff, at special term in June, A. D. 1857, by Spencer, J.

The action was tried at special term on submission. It was founded on a promissory note for $1,250, dated Covington, Kentucky, March 7, 1854, made by Chas. Leggitt, and payable to A. H. Smith and M. A. Finch, or order, in one year, at the Ohio Life Insurance and Trust Company, in Cincinnati. Leggitt and Finch were not served with process, and the case proceeded to judgment against Smith only.

The plaintiff claimed title through the indorsements of both payees, and sought to recover the amount of the note and interest. Smith resisted his right to do so, setting forth in his answer, among other things, that he indorsed the note in Kentucky, and there delivered it to Finch; and, by the law of that State, before any indorser can be made liable, except on negotiable notes, made payable at and discounted by an incorporated bank within the State, the maker of the note must be first prosecuted to insolvency, by judgment and execution, which, it is averred, had not been done.

Charles Conahan *v.* Adolphus H. Smith.

It was in evidence, however, that the note had been presented for payment at the office of the Ohio Life Insurance and Trust Company on the day it became due, and the proper steps taken, in due time, to charge the indorsers.

The judge who heard the cause, having decided that the defendant could not be held upon his indorsement, at the request of the plaintiff's counsel, found the matters of fact appearing on trial, and the determination of the questions of law arising thereon, separately, as provided by the code.

*Ketchum & Headington*, for plaintiff in error.

*Ferguson & Long*, for defendant in error.

Storer, J. delivered the opinion of the court.

The important, and it may be said the only question to be decided here, is whether the *lex loci* or the *lex fori* shall determine the liability of the defendant in error; and this directly involves the inquiry whether the judge who tried the cause erred in the judgment rendered.

It can not be denied but every indorsement upon a note, or bill is a new contract, imposing an independent obligation, though subject to the conditions upon which every such agreement is supposed to be made. While, therefore, the indorser may, in every proper case, be required to discharge the debt he has transferred, he can only be compelled to do so where the maker or acceptor has refused to pay, and legal evidence of such refusal is communicated to him. The delinquency does not, of itself, create a liability against him, nor can the knowledge of the fact derived in the ordinary course of business. The holder, who has presented the note or bill for payment, must advise, without delay, the party he is desirous to charge with the debt; and he must prove, moreover, affirmatively, that such a course was pursued. Hence it is that the law merchant, which many of

the States have adopted, prescribes a definite rule, that is not only rigidly adhered to, but has become, in reality, a part of every contract represented by a negotiable instrument.

Where no such rule prevails, it is competent for the legislature of each State to prescribe the mode to be pursued, and when established, it becomes the law of the contract—that by which the indorser knows his liability is to be created, and to which all parties must have referred.

The law of the place universally controls the contract as to its validity. If it can not be enforced there, it is of no value in any other forum. There have been many nice distinctions attempted in the desire expressed by some tribunals to limit the operation of the rule; but they are more specious than solid. Unless we preserve the well defined boundaries that distinguish the substance of the agreement from its mere form, or the remedies that may be pursued to enforce it, we shall have no clear idea of the doctrine so fully established by Lord Mansfield in *Robinson* v. *Bland*, 2 Burr. 1077, and which has come down to our own times as the unquestioned law.

As illustrative of the proper application of the *lex loci* to the various cases continually occurring in the courts of our sister States, we find very many which resemble the one before us, in every essential particular.

In 3 Mass. 80, *Powers* v. *Lynch,* where the indorser of a bill drawn in a foreign country, and indorsed by one who had his residence there, it was held that he was answerable only according to the laws of that country. In this case the bill was drawn in Demarara, and there indorsed; the place of payment was Boston, and, payment being refused, the indorser, who was then in Massachusetts, was sued by the holder. The bill had been protested in due form, and the usual notice of dishonor given, but it appeared on trial that, by the law of Demarara, the indorser could not be held. He was allowed the same defense here that he would have been permitted to make there. See, also, 6 Cranch, 222, *Slocum* v. *Pomeroy;* 12 Wendell, 443, *Aymar* v. *Sheldon;*

4 Cowen, 508, *Andrews* v. *Herriot*, and the very learned note of the reporter, who has given a synopsis of all the cases upon the subject.

In 1 Metcalf, 83, *Williams* v. *Wade*, the action was against an indorser upon a note made and indorsed in Illinois, where a similar law existed as that which prevails in Kentucky, and it was decided that the law of Illinois did not affect the remedy, but went to create, limit and modify the contract of indorsement; and as the course required in that State had not been pursued, he could not be made responsible in Massachusetts. See, also, *Carroll* v. *Pupton*, 2 Sand. Sup. C. R. 171; Story Con. Laws, sec. 261; Story on Prom. notes, sec. 171.

There has been some confusion in applying the rule, and the exception which has been made to it. Where the contract, though made in a foreign State, is to be performed here, it is held that the liability as well as the remedy, will depend upon the law of the place where the duty is to be performed or the money paid. We suppose this apparent uncertainty had its origin in the effort to carry too far the doctrine already established in *Robinson* v. *Bland*, where Lord Mansfield labored to prove the contract was to be governed by the law of England, though made in France, because the bill was payable in London; but there could have been no intention on his part to extend the rule to third parties, nor yet to an independent contractor, like an indorser. The original parties alone can be embraced within it; it must be limited to them, and can not include those who are collaterally bound. 1 Bingham N. C. 151, *Trimbey* v. *Vignier*.

As it is found in the record that Conahan has not sued the maker of the note, obtained judgment and issued execution against him, without obtaining payment, it is immaterial whether Smith has been notified in the usual course or not. The latter proceeding might subject the indorser, if another had not been prescribed; as the former was not pursued, no other can avail.

Charles Conahan *v.* Adolphus H. Smith.

We have been asked by the plaintiff's counsel to regard the indorsement of Smith in blank, and the delivery of the note to Finch, the other payee, as implying an agreement on the part of Smith, that Finch might negotiate it in Ohio, and thereby remove the restriction of the *lex loci*, which would otherwise attach to this contract; but it is apparent from the evidence and the finding of the judge, no such right was intended to be conferred.

Smith simply indorsed the note, to transfer his interest to Finch, who thereby became the sole owner, and might well impart the title thus acquired to a third person. The relation the payees bore to each other was not that of partners, though their interest, for some purposes, may have been joint. By the terms of the note, they are presumed to be equally entitled to share in its proceeds, wherever paid, and if, in reality, the one should hold a larger interest than the other, equity would protect it; and if such is the condition of the parties, either could convey his share of the security, like his right to any chattel, and the mode of transfer, whether by indorsement on the note, or by a separate instrument can not affect the question. In no event could Smith or Finch assign more than the interest they actually held.

Where a note or bill is made payable to several persons, who are not in partnership, neither can transfer the contract by his individual indorsement, and can not, therefore, bind the other payees. So when money is paid into a bank on the joint account of persons, not partners in trade, the bankers are not discharged by the payment of the check of one, without the concurrence of all. See Smith's Mer. Law, 287, and *Carrick* v. *Vickery*, 2 Douglass, 653, n. 134, where a jury of merchants, contrary to the former opinion of the King's Bench, so held, and their verdict was sustained by Lord Mansfield. See, also, *Stone* v. *Marsh*, Ryan & Moody, 364; *Stewart* v. *Lee*, 1 Mood. & Malk. 158.

As then Smith could assign his moiety only, and his indorsement could vest no greater right in Finch, it can not

Charles Conahan *v.* Adolphus H. Smith.

be inferred, as between these parties, that Smith should guarrantee the payment of the entire note; and without any express agreement to that effect, he could not extend his liability beyond his real interest in the subject of the transfer. Having obtained the entire ownership by Smith's indorsement, Finch might well negotiate the note, and, by adding his name, confer on a third person the same right. When both payees had indorsed the note, they might very properly be made responsible, if the legal course should be pursued. 14 Pick. 268, *Goddard* v. *Lyman*.

Still the indorsement of Smith, however limited its operation, was essential to transfer his interest; and so far it resulted, when made, in an agreement on his part, *quoad* that interest, at least he would be liable, if at all, to indemnify his assignee in case the maker refused to pay. It was the evidence of the contract, and the only evidence retained by Finch; hence it is immaterial what the extent of the contract may be, or how far it concluded the indorser. The contract itself is what we have to consider; and whatever may have been its consequences, we must look to the time when the obligation was made, and the place where it took effect.

Whenever Smith had transferred his interest, and delivered the note to Finch, his liability was created; no further act was required on his part; nothing more was to be done by him either in Kentucky or Ohio. The whole transaction took place in Kentucky, and there we must find the rule upon which it is to be sustained or held to be invalid.

There is no pretense that Smith was privy to the transaction afterward made between Finch and Conahan, or became interested in any part of the proceeds received when the note was discounted. His liability depends entirely upon his indorsement, to be established by proof that the law of the place where it was made has been complied with by the plaintiff. This was not done, and we must hold, as did the judge at special term, the plaintiff could not recover.

Judgment affirmed.