SHEKEN (GRAHAM v.). See Case No. 5,675.

## Case No. 12,745.

### In re SHELBOURNE.

[19 N. B. R. 359.] 1

District Court, S. D. New York. Nov. 26, 1879.

NOTES — EQUITIES BETWEEN ORIGINAL PARTIES — RULE IN NEW YORK—BANKRUPTCY—AMOUNT PROVABLE—FOLLOWING STATE DECISIONS.

The bankrupt, in 1869, executed a note for ten thousand dollars, payable, in three years, to one C., for the purpose of settling an account between them. It was indorsed by C., and left in his possession. A disagreement arose, however, about the items of the settlement, and no final agreement was made as to the disposition to be made of the note. One T. purchased the note before maturity, and without notice of any equities between the maker and payee, for one thousand five hundred dollars. All the parties were citizens and residents of the state of New York. In an action on the note in the state court, T. recovered a judgment for the

whole amount of the note, which judgment was reversed on appeal and a new trial granted, unless plaintiff should consent to reduce the judgment to the amount paid by him and interest. On proof of claim, held, that the judgment of the appellate court was not a conclusive determination of the rights of the parties in this proceeding; that the note having been negotiated in the state of New York, and all parties being residents thereof, the rights of the claimant are controlled by the law of that state, and that in accordance with the decisions of that state, the claimant is only entitled to prove for the amount paid by him with interest.

[In the matter of Sidney F. Shelbourne, a bankrupt.]

F. G. Salmon, for opposing creditors.

Jas. G. Thompson, for petitioner.

CHOATE, District Judge. The question in this case is whether the holder of a promissory note made by the bankrupt is entitled to prove for the whole amount of the note or only for the sum he paid for the same, with interest. The facts are agreed upon as follows: The bankrupt was adjudicated upon his own petition, which was filed August 28, 1878. The claimant, Henry B. Todd, made proof upon a promissory note signed by the bankrupt, dated October 26, 1869, whereby he promised to pay, three years after date, to James Cummings, or order, ten thousand dollars for value received. This note was made for the purpose of settling an account between Cummings, the payee, and the bankrupt. It was indorsed by Cummings and left in his possession. Cummings and the bankrupt, however, disagreed about the items of the settlement, and no final agreement was made between them as to the disposition to be made of the note. In October, 1872, Cummings sold the note to the claimant Todd for one thousand five hundred dollars. At the time of the purchase, Todd supposed, from an examination of the books of Cummings, that the bankrupt owed Cummings an amount exceeding the amount of the note. Todd purchased the note without any notice of the transaction between Cummings and the bankrupt as to the delivery of the note. The bankrupt, Todd and Cummings were at the time the note was made and have ever since been all citizens and residents of the state of New York. In October, 1872, Todd brought an action on the note in the supreme court of the state of New York against the bankrupt, and after a hearing upon the merits the court rendered a judgment in said action against the bankrupt for the whole amount of the note and interest with costs. The bankrupt appealed from said judgment to the general term of the said court, and the general term reversed the judgment and ordered a new trial, unless the plaintiff (Todd) should consent to reduce the judgment to one thousand five hundred dollars and interest. Neither party has appealed from the order of the general term, nor has the consent to reduce the judgment been given, and

the action is still pending in said court awaiting trial. All of these proceedings were prior to the filing of the petition in bankruptcy.

On these agreed facts it must be held that the claimant Todd took the note before maturity for value without notice of any equities between the maker and the payee; that as between the maker and the payee there was no consideration, and the payee indorsed the note to Todd in violation of the terms of the agreement on which he held it, and that he held it without any authority to negotiate it.

Two questions have been discussed: 1st, whether the decision of the general term of the supreme court is conclusive in this proceeding against the creditor's right to recover more than the amount paid for the note and interest; and, if not, 2dly, for what amount the creditor should be allowed to prove.

1. The proceedings in the state court are not a conclusive determination of the rights of the parties. There is no judgment that can be pleaded as an estoppel of record. The judgment that was entered has been reversed, and is of no new effect, and no new judgment has ever been entered. There is simply a suit pending between the parties undetermined. It is true that the court in which it is pending has expressed a very decided opinion as to the rule of law by which the rights of the parties are to be determined, and, doubtless, in that suit, the question argued and passed upon would be deemed no longer an open question of law, unless the case should reach the court of appeals; but in any other court that determination would only have the weight and consideration to which the reasoning of the judges rendering the decision seems to entitle it. It certainly would not be conclusively binding on any other court of concurrent jurisdiction to which the same case might be presented. If the claimant Todd should discontinue his suit in the supreme court, or become nonsuited, and afterward commence another action on the note in another state court, and the same facts precisely should be shown in the second suit as in that now pending, the decision in the supreme court would not conclude him, if the court in which he afterward sued should come to a different conclusion on the same question of law. See Wood v. Jackson, 8 Wend. 9; Delaunay v. Burnett, 4 Gilman, 454, 497.

2. It is, therefore, open to this creditor to claim the whole amount of the note, if entitled thereto. There is, I think, no doubt that according to the authoritative decisions of the courts of New York, this creditor, Todd, can recover in the courts of this state only the amount he paid for the note, and interest on the same from the time of the purchase. The principle of these decisions is that while as against the maker of the

note, who has apparently put it in the power of the payee to represent the note to be a valid promissory note, the holder of the note, who took it in good faith for value before maturity, is entitled to an indemnity on the ground of an estoppel in pais, yet in reality the note is invalid, and not in fact commercial paper, and the holder does not become vested with the rights of such bona-fide holder of commercial paper according to the law merchant. It was so held in this creditor's own suit in the state court, and the ruling there made is abundantly supported as the law in this state by the authorities cited in the opinion of the general term. Todd v. Shelbourne, 8 Hun, 510. The basis of the decision is that the paper sued never became a promissory note at all, never having been delivered as such to the payee; but the maker having carelessly entrusted the possession of it with the payee, under circumstances calculated to lead a purchaser to believe that the payee had authority to negotiate it, the loss caused to the purchaser by reliance on this deceptive appearance of authority must fall, not on the innocent purchaser, but on the maker who himself created the deceptive appearance. And, as in all other cases of estoppel in pais, the amount that can be recovered by the party deceived is the loss he has suffered, and no more, as the court say in that case: "The paper derives its vitality wholly from the circumstance that it has been obtained for value without notice by an innocent purchaser. For his protection it is maintained in his hands as a legal obligation. The object of the law is to save him from loss; and to do that, a recovery of the amount he may have advanced is all that can be required. To go beyond it would be inequitable and unjust to the party after that equally entitled to be protected from unnecessary loss." As here expressed, the idea seems to be that a partial or quasi validity, for the purpose of and up to the extent of an indemnity, is by a species of legal fiction, and to prevent injustice, given to the note. And in accordance with this idea the mode of pleading allowed is as upon a promissory note and not specially upon the case; and this mode of pleading is proper and logical on the theory of an estoppel, because the very meaning of an estoppel is, that the party estopped is prevented from denying the truth of the fact represented by him to be true, which in this case is, that the paper is a promissory note duly delivered, as its purport and the possession of the payee clearly indicate. But the rigor of this estoppel, or inability to deny the fact, is mitigated so far that for all purposes of recovery beyond the loss sustained by reliance on the representation the estoppel ceases, and the party estopped may show the truth. The true ground of the decision, therefore, is an estoppel, and neither the form of pleading allowed nor the ex-

pression in the decision to the effect that the paper has validity as a legal obligation for the protection of the innocent purchaser, are inconsistent with this view.

It is insisted, however, that the true rule of the commercial law is that the purchaser for value before maturity of what purports on the face to be commercial paper, without notice of any want of authority of the payee to negotiate it, becomes vested with the title thereto unaffected by any equities existing between the maker and the payee; that the note, by its negotiation, becomes by the law merchant a valid obligation of the maker to its full extent, and not merely a quasi or limited obligation by way of estoppel, even though the note has been put in the possession of the payee by the maker without authority to negotiate it. It is argued that unless this is so, the security of the purchaser of commercial paper, which is very greatly favored and protected in the interests of commerce, is greatly impaired. And it is further insisted that this is the rule of commercial law as declared by the supreme court of the United States; that by the rule so declared this creditor is entitled not to an indemnity only, but is fully vested with the rights of a bona fide indorsee for value before maturity, and entitled to recover the whole amount of the note and interest; that this court is bound in this case to administer the law as held by the supreme court of the United States and not the local law of New York.

It is not to be denied that in passing upon the rights of a bona fide holder for value before maturity of what is on its face commercial paper, the supreme court of the United States has differed from the courts of New York and many other states and has, in the interest of commerce, as understood and declared in its decisions, held more rigidly to the general principle which is admitted by all courts, of excluding, by way of defence, the equities existing between the prior parties (Goodman v. Simonds, 20 How. [61 U. S.] 343; Brown v. Spofford, 95 U. S. 474), and in favor of a party who, under the constitution and the laws of the United States, is entitled to relief in the courts of the United States; that is to say, aliens and citizens of a state other than that of which a party sued is a citizen, and who in the particular case is not bound by the local law under which the other party seeks to defend, the courts of the United States administer the law as declared by the supreme court, even though in conflict with the law of the defendant's state (Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175; Butz v. City of Muscatine, 8 Wall. [75 U. S.] 575; Township of Pine Grove v. Talcott, 19 Wall. [86 U. S.] 666; National Bank of Republic v. Brooklyn City, etc., R. Co. [Case No. 10,-039]).

Whether the particular question involved in this case in respect to the right to show the invalidity of the note in the hands of the payee for the purpose of limiting the recovery to the amount paid and interest has been determined by the supreme court of the United States, has been discussed in the present case. Most of the decisions touching the subject have been cases where the holder paid full value, and this precise question could not arise in such cases. This is true of the case chiefly relied on by the learned counsel for this claimant, Cromwell v. County of Sac, 96 U. S. 51. But I have not found it necessary to determine this question because it seems to me that however that may be, the rights of the claimant as the purchaser of this paper are controlled by the law of New York. The note was made and sold to this claimant in the state of New York, and the question whether or not the purchaser took the title of a bona fide indorser for value before maturity must be determined by the local law. In Trimbey v. Vignier, 1 Bing. N. C. 151, it was held that where by the law of France the indorsement in blank of a promissory note gave the indorsee no right to sue on it in his own name, but only the right to sue for it in the name and as the agent of the indorser, the indorsee could not sue on it in his own name in England. The court say: "The interpretation of the contract must be governed by the law of the country where the contract was made; the mode of suing, and the time within which the action must be brought, must be governed by the law of the country where the action is brought." And they held that the rule of the local law by which an indorsement in blank does not operate as a transfer of the note was "a rule which regulates the interpretation of the contract," and not "the mode of instituting and conducting the suit." So where by the law of the state where a note was indorsed, the indorser was not liable until after judgment had been obtained against the maker, it was held that without the recovery of such judgment he could not be held as indorser in another state, on the ground that this was not a matter affecting the remedy merely, but a condition of liability which was part of the contract itself. Williams v. Wade, 1 Metc. [Mass.] 82. The parties must be held to have had reference to the law of New York where the note was indorsed and delivered to the purchaser as regards the determination of the rights created by that indorsement and transfer. Aymar v. Sheldon, 12 Wend. 439. This rule, that the law of the place where a contract is made governs in respect to its validity and interpretation, is recognized and applied by the supreme court of the United States in the case of commercial paper made and passed within one of the United States. Tilden v. Blair, 21 Wall. [88 U. S.] 241. In the present case I think it is clear that the rule of the New York courts, which limits the recovery of the purchaser of the note to the amount paid and interest, is not a mere

rule affecting the remedy, but is a rule regulating the validity and interpretation of the contract. Those courts in effect hold that in New York the title to the note as a note does not pass, that the note has no validity, and they give the holder damages by way of indemnity only, for the very reason that no title passes.

Ordinarily, I think the rule in bankruptcy must be that a creditor can prove only for that sum which he would be entitled to recover in an action if there were no bankruptcy, and in this case the claimant Todd could in no way, nor in any court, recover of the bankrupt more than he paid and interest. It is possible, of course, that by reason of a difference in the laws of different states, or of the notes of the bankrupt being sold in different states, purchasers in one state may have very different rights from those in another state. It is possible that another purchaser of a similar note of the bankrupt, for the same price at which this claimant bought this note, might make good his claim to the whole amount, either as a creditor proving in bankruptcy or in a suit in a court of the United States. But this possible inequality between creditors is no greater after bankruptcy than it is independently of bankruptcy, and it rests on a real difference in the rights of the parties as fixed by the different laws of the states in which the negotiation of the paper is made. But I think there is no ground for the claim that the courts of the United States apply as between the citizens of a particular state any other law than the law of that state, as respects the validity and interpretation of contracts made in that state, whether the contract be one arising out of the making or negotiation of what purports to be negotiable paper or anything else. No question is here involved of the rights of citizens of other states, or of the effect of the negotiation of commercial paper in another state, as affecting the rights of the holder acquired thereby or of the effect of subsequent legislation for judicial interpretation operating as an attempted violation of the obligation of a contract valid when made —questions which arose in some of the cases cited where the courts of the United States have refused to apply the law, as held in local tribunals, to invalidate the title of holders of commercial paper, who are entitled, as citizens of another state or as aliens, to sue in the courts of the United States. Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175; Township of Pine Grove v. Talcott, 19 Wall. [86 U. S.] 666; Butz v. Muscatine, 8 Wall. [75 U. S.] 575. While in these and other similar decisions it is declared by the supreme court that, upon questions of commercial law, the courts of the United States are not bound by the decisions of the courts of the state where the cases arise, yet the cases before the court, in respect to which the rule was so held, were in every instance cases of a "controversy between citizens of different

states," or "between citizens of a state and subjects of a foreign state," to which the judicial power of the federal courts, by the constitution, extends. Many of them were cases where the paper had been negotiated out of the state whose local law it was sought to apply. In the leading case of Swift v. Tyson, 16 Pet. [41 U. S.] 1, where the court refused to follow the settled law of New York, as established by the decisions of the courts, to invalidate the title of an innocent indorser for value of commercial paper on the principle above stated, the plaintiff was a citizen of Maine, suing as indorsee of what purported to be commercial paper, negotiated in Maine, and transferred to the plaintiff there; and there was nothing to show that the law of Maine, where the contract of indorsement was made, was different from the common law upon the point in question. In that case, therefore, and those that have followed, the question that arises in the present case, whether the rights of a citizen of New York, claiming under a contract made in New York, are not bound by the law of New York, as declared by its judicial tribunals, and independently of any statute governing the case, did not and could not arise. This distinction between the rights of persons who are entitled to sue in the courts of the United States, and those of parties to a contract, who are both subject to the law of the same state, is clearly pointed out by the supreme court in the case of Watson v. Tarpley, 18 How. [59 U. S.] 517. In that case the question was whether the statute of a state, forbidding a suit from being brought by the indorsee of a bill, before its maturity, in case of non-acceptance, had any effect on a suit brought in a court of the United States. Mr. Justice Daniel, delivering the opinion of the court, said: "While it will not be denied that the laws of the several states are of binding authority upon their domestic tribunals, and upon persons and property within their appropriate jurisdiction, it is equally clear that those laws cannot affect, either by enlargement or diminution, the jurisdiction of the courts of the United States, as vested and prescribed by the constitution and laws of the United States; nor destroy or control the rights of parties litigant, to whom the right of resort to these courts has been secured by the laws and constitution. This is a position which has been frequently affirmed by this court, and would seem to compel the general assent upon its simple enunciation. The general commercial law being circumscribed within no local limits, nor committed for its administration to any peculiar jurisdiction, and the constitution and laws of the United States having conferred upon the citizens of the several states and upon aliens the power or privilege of litigating and enforcing their rights acquired under and defined by that general commercial law, before the judicial tribunals of the United States, it must fol-

low, by regular consequence, that any state law or regulation, the effect of which will be to impair the rights thus secured, or to divest the federal courts of cognizance thereof in their fullest acceptation under the commercial law, must be nugatory and unavailing." This decision cites and approves Swift v. Tyson, which case gave an interpretation of the thirty-fourth section of the judiciary act [1 Stat. 92], providing that the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trusts at common law in the courts of the United States in cases where they apply, "limiting that provision to the local statutes or local usages of a fixed and permanent operation," and holding that on questions of commercial or common law the courts of the United States were not bound to follow the decisions of the local tribunals; and the case of Watson v. Tarpley, cited above, properly limits this principle to cases of those persons who, under the constitution of the United States, are secured in the right or privilege of litigating their controversies in the courts of the United States; that is to say, aliens and citizens of different states.

I think, therefore, both upon reason and authority, that the rights of this creditor are to be determined by the local law, unless the fact that the question arises upon the proof of debt in bankruptcy brings the case within the principle of the decisions above referred to. I think not. It was the purpose of the bankrupt law [of 1867 (14 Stat. 517)] to secure the ratable distribution of the bankrupt's property among his creditors,—not to enlarge or alter the rights of the creditors, but simply to ascertain them, for the purpose of this distribution, as they were at the time of the bankruptcy. This creditor's rights were then fixed and certain. There was no court to which he could resort which would give him more than the amount he paid for the note and interest. This view, drawn from the general purpose of the bankrupt law, is confirmed by some of its special provisions. In case of a dispute as to the amount due a creditor, this court may permit a pending suit to go on to judgment for the purpose of determining the amount due. As between citizens of the same state such suit must go on in the state court. This court could not authorize a suit in such a case in a federal court. Undoubtedly the bankrupt court may assume the determination of the question itself, but it would be a very singular result if, in determining the amount due to the creditor, it should be found to fix a larger sum than the creditor could recover in the court to which this court is authorized to send him for the same purpose.

The decision of the register, reducing the claim to one thousand five hundred dollars and interest, is affirmed.