## Case No. 4,141.

DUNDAS et al. v. BOWLER et al.

[3 McLean, 397;[1] 2 West. Law J. 27; 7 Law Rep. 343.]

Circuit Court, S. D. Ohio. July Term, 1844.

Mr. Worthington, for plaintiffs.
Wright & Fox, for defendants.

OPINION OF THE COURT. This bill is filed to foreclose a mortgage executed by the defendants the 17th of July, 1839, on a lot in Cincinnati, to secure the payment of a certain sum to Shoenberger, who assigned it, and the accompanying notes for the same amount, to the Bank of the United States, on the first of September following. On the 1st of May, 1841, the bank assigned the mortgage and notes to the complainants, in trust, with other choses in action, to pay certain banks in the city and county of Philadelphia, for post notes of the Bank of the United States, which they held, amounting in the whole to the sum of five millions seventy-eight thousand four hundred forty-four dol-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

lars and ninety four cents; a schedule of which notes is annexed to the assignment, and also the sums due to the respective banks. The choses in action assigned, amounted to the sum of seven millions seven hundred seventy-two thousand two hundred and fifty dollars. As the claims should be collected, payments pro rata were required to be made to the creditor banks, and after full payment, the trustees were to account for and pay over to the Bank of the United States the surplus that should remain in their hands.

The defendants contend, that under the statutes of Ohio, they have a right to pay off the above mortgage and notes in the bills of the Bank of the United States, which are at a considerable discount. There are several other causes pending, which involve the same principle, and in one or more of which, the validity of the assignment to the complainants, is made a question. At the last term, this court held, that they could exercise jurisdiction in the case, and the points now urged in the defence may be considered under two heads: 1. Is the assignment to the complainants valid? 2. What effect can the statutes of Ohio have on the case?

And first, as to the validity of the assignment. This point has been settled by the decision of the supreme court of Pennsylvania, in the case of Dana v. Bank of U. S., 5 Watts & S. 223. After considering the question at large, under the provisions of the charter and on general principles, the court say, "Hence, also, if the Bank of the United States had not had any express powers granted to it by the act of its incorporation, to dispose of and assign its property for the purpose of securing and making payment of its debts either in part or in whole, as the occasion might seem to require, in the judgment of the board of directors, it would have had such power by necessary implication, from the very nature of its business, unless it were expressly restrained by its act of incorporation, which is not pretended." They held that it belonged to the president and directors, and to them only, to make the assignment, and to determine on the propriety of its being done. This assignment having been made in the state of Pennsylvania, is governed by the law of that state. It was made under a statute of that state, and the construction of that statute, in regard to the power of the president and directors, has been settled in the opinion above cited. This constitutes a rule of decision for the courts of the United States. The law of the place where an assignment is made governs it, whether the instrument transferred be negotiable or not. A bill of exchange was drawn in Massachusetts on England, and indorsed in New York; and again it was indorsed by the first indorsee in Pennsylvania, and by the second in Maryland. The bill was dishonored, and a question was made for what amount of damages the respective indorsers

were liable. In Massachusetts the damages on a protested foreign bill were ten per cent., in New York twenty, and in Maryland fifteen; and it was held that each indorser was liable under the law of the place where the indorsement was made. Each indorsement was considered a new contract, governed by the lex loci: and that each indorser bound himself to pay, should the bill be dishonored, the damages given by that law. Story, Confl. Law, § 314. This does in no respect conflict with the doctrine, that the law of the place where a contract is to be performed governs it. A note was made at Paris, in France, payable to the order of the payee, which was indorsed at Paris in blank. By the law of France, for an indorsement to transfer the legal right in the note, the name of the party and the consideration must be stated; a blank indorsement is treated as a mere procuration. Suit was brought in England on this note, and it was held, that although the indorsement, if made in England, would have transferred the property in the note to the assignee, yet as such was not the effect of it in France, the indorsee could not maintain the action. Story. Confl. Law, § 315.

And so if an indorsement of a negotiable bill be made in a state, where a prosecution to insolvency of the maker is the condition on which the indorser is made liable, he can be made liable in no other mode. And if it shall appear that the indorsement was made to an unauthorized banking institution, in violation of law, the holder under such indorsement cannot maintain an action. The contract of assignment is as much governed by the lex loci, as the original instrument. It is supposed that the statute of this state, of the 14th of March, 1838 [Laws Ohio, p. 57], which provides, that "all assignments of property in trust which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors, to the exclusion of others, shall be held to enure to the benefit of all the creditors," applies to the assignment under consideration. How this law can affect an assignment made in Pennsylvania, I cannot perceive. The idea that, as the original contract was entered into in Ohio, the assignments, though made in any other state, are governed by the laws of Ohio, is wholly unsustainable. This has already been shown. Now, is there anything in the nature of the above mortgage and negotiable notes, to make them an exception to the general rule? A deed for the conveyance of real estate, can only take effect in virtue of the law of the state where the land is situated. A mortgage comes within this rule, but the rule does not embrace an equitable transfer of such mortgage, and an indorsement of the negotiable notes, to which it is an incident. No law of a state can have an extra territorial operation. Contracts made within the state, unless they are to be executed beyond its limits, are regulated by the local law.

There is no exception to this rule, except as regards the sale and conveyance of real estate. Under the law of Pennsylvania, a debtor may secure by mortgage, or otherwise, some creditors in preference to others; and such is the common law. There is no law in Ohio, that can reach or affect the contract of assignment by the bank to the complainants. The mortgage and negotiable notes are Ohio contracts. They were executed within the state, and nothing is required to be done under them in a foreign jurisdiction. We may look, therefore, to the local law to see what effect, if any, it can have on the terms of the above contracts.

It is conceded that where a note is given under a law which declares that the equities shall remain open between the original parties in the hands of a bona fide assignee, no negotiation or change of place can cut off this right of the maker. It is the law of the contract, and may be set up wherever suit shall be brought. And this holds in all instances, where the local law enters into the contract and becomes a part of it. A note is given and made payable in a state where eight per cent. is the legal rate of interest. This interest is recoverable in a state where more than six per cent. is declared to be usurious. And this, in my judgment, is the only practicable distinction between the remedy and the law of the contract. The former belongs to the forum, like the statute of limitations, the latter is inseparable from the contract, like the rate of interest. The ninth section of the act of January 28, 1824 [Laws Ohio, p. 360], in relation to assignments made by banks, provides, "that when suit is brought by a bank, or by assignees for its benefit, the sheriff shall receive the notes of the bank in discharge of the judgment."

In Pancoast v. Ruffin, 1 Ohio, 381, the court held "that where the debt due a bank has been assigned in good faith, and the bank has no interest left in it, the assignee is not bound to receive the notes of the bank in discharge of it." The assignment by the Bank of the United States in this case, is not alleged or shown to be fraudulent. The assignment must be presumed to be bona fide, until the contrary be proved. But it is contended that the bank did not transfer the whole of its interest in the choses in action specified, as they exceed the amount of the debt secured by more than two millions of dollars, and the complainants are bound to account to the bank for the surplus. This is true, but the assignment is absolute until, from the proceeds, full payment shall be made to the creditor banks. Now whether there will be any surplus cannot be known before the collections are made. The interest of the bank is contingent, depending upon an event which may never happen. When the creditor banks shall be paid, the residue of the fund, if there shall be any residue, will belong to the bank. The whole

of the fund, without any reservation, is conveyed by the bank for the payment of the debt, and until this object shall be accomplished the complainants in law and equity have an exclusive interest in the mortgage claim. The law of 1824 is not objectionable on the score of principle or policy. A bank should be compelled to receive its own paper in payment of debts, and also in discharge of judgments, whether obtained in its own name or in behalf of some other name for its benefit. And this is the extent to which the act goes. A bona fide assignment is not within the letter or policy of the act. But it is insisted that the first section of the act of the 5th March, 1842 [Laws Ohio, p. 33], "declares that the true intent and meaning of the ninth section of the act of 1824 was, and is, to entitle every debtor of a bank or banker to pay such debt in the notes of the bank or banker, against such bank or banker, or the assignee of either, whether such bank or banker retains an interest in the same or has parted with all interest therein." The legislature have an undoubted right to modify existing laws, or pass new ones, as in their judgment the public interest may require. And there are many cases in which they may give a retrospective effect to remedial laws. But they are expressly inhibited by the constitution of the United States, from impairing the obligation of contracts—and here the question directly arises whether the above act is not a violation of the constitution in this respect.

The settled construction of the contract in the hands of a bona fide assignee and holder, by the supreme court of the state, is that such holder is not bound to receive, in discharge of the demand, the notes of the bank. The statute would seem to be susceptible of no other construction. How then does the act of 1842 affect the contract? By it the holder is bound to receive the notes of the bank in payment. This then impairs the obligation of the contract. It provides that the contract shall be discharged by the payment of a different medium from that which the constitution secures. Every evidence of debt gives the holder a right to demand in payment gold or silver, but the above act declares that such debt may be paid in bank notes. If this law had existed when the contract was entered into, there would be no objection to it. The effect of the act would then have been to restrain the negotiability of notes given to banks. The assignee under the law would have had no better right to demand payment in gold or silver than the bank, and this being the law it would have entered into the contract and constituted a part of it. It would be nothing more than leaving all equities open in a suit brought by the assignee, as they would have been in a suit brought by the bank. But this act instead of being a remedial one, as regards past transactions, strikes at the contract and essentially im-

pairs it; the act is, therefore, as regards prior and bona fide assignments, unconstitutional and void.

A declaratory, like any other act, may be unconstitutional, as it impairs the obligation of prior contracts, and yet its action on future contracts may be unobjectionable. And this is the character of the act under consideration. From the time of its passage it modifies the ninth section of the act of 1824, but retrospectively, it can have no such effect. An act which declared that all promissory notes which had been negotiated might be discharged by the makers, with the notes of the promisees, would so clearly impair the obligation of the contract to pay in gold or silver, that no one could doubt on the subject. And this, as regards prior contracts, is the effect intended to be given to the act of 1842. The negotiability of choses in action, are subject to the regulation of the legislature, but they can no more affect a prior assignment, than they can impair or destroy any other prior contract. As between the original parties to the note, a law of off-set, though enacted subsequently to the execution of the note, may apply to it. For in this view it relates to the remedy. But when the note is in the hands of a bona fide assignee, an off-set, as between the original parties to the note, cannot be applied to it without essentially impairing the legal effect of the contract of assignment. A decree may be entered for the sum due, and if not paid in, the mortgaged premises may be sold conformably to the laws of the state.