## W. and H. B. OGDEN vs. PRENTICE.

An assignment in trust for the benefit of creditors cannot be attacked by a judgment creditor of the assignor, in an action brought by the assignees, on the ground of its being made with the intent to hinder, delay and defraud creditors, where the judgment was not recovered until after the date of the assignment, and is only a judgment for costs.

Such an assignment is good, as between the parties to it, even though it be fraudulent as against the creditors of the assignor.

It is not necessary that the assignees should give notice to a judgment creditor of the assignor, of the assignment, in order to prevent the creditor from using his judgment as a set-off, or other defense, in an action brought by the assignees.

A judgment recovered against an assignor, for costs, after the making of an assignment by him, and without notice to the judgment creditor of such assignment, is not a set-off, or other defense, in an action brought by the assignees, within the meaning of section 112 of the code.

Liability of the husband for goods sold to his wife, during coverture.

A husband is liable for articles of clothing purchased by his wife when he knows of her having them, and sees her wear them, without expressing any disapprobation.

THIS action was commenced before a justice of the peace. The plaintiffs were the assignees of Mary Ogden, who had carried on the millinery business in the village of Binghamton. She made a general assignment to the plaintiffs, in trust for the benefit of her creditors, on the 15th day of June, 1859. And among the things assigned to the plaintiffs was an account the assignor had against the defendant for a winter bonnet, sold by her to the wife of the defendant on the 11th day of December, 1858, the price of which was $10.50 ; and a summer bonnet, or hat, which she sold to the wife of the defendant, on the 14th day of June, 1859, and for which she charged the defendant $6. The defendant was a farmer, and had a farm of 130 acres well stocked, on which he resided, about six miles from Binghamton. His farm was worth $4000 or $5000, and he had money loaned out, drawing interest. His wife lived with him, and they had been married fourteen or fifteen years, and had children. The defendant's wife had a winter hat on the 11th day of Decem-

Ogden *v.* Prentice.

ber, 1858, when she purchased the winter hat of Miss Ogden. She had worn the old hat four winters, and one witness said it "was worn, faded and out of fashion." When the defendant's wife got the summer hat or bonnet in question she had a summer hat, which one witness stated she bought the summer before she purchased the winter hat, and that it was a willow hat, and cost a few shillings ; that she had worn it spring, summer and fall, and that it was very much soiled, in the fall. One witness testified that about January or February, 1859, he endeavored to persuade the defendant to give back to his wife some of her money, or to supply her with such things as she needed, and that the defendant said he should do neither. Another witness stated that in the winter of 1858, the defendant's wife asked her husband for money, "saying that she was going to Binghamton and wished to get some things she wanted ; that the defendant told her he had no money for her." In the fall of 1858, one Parker let the defendant's wife have a pair of shoes and charged them to the defendant. Thereafter, in the same fall, Parker told the defendant he had charged a pair of shoes to him, ordered by his wife ; the defendant answered, "when he bought anything he paid for it ; let others do the same." He did not pay for the shoes. In December, 1859, Van Name talked to the defendant about letting his wife have goods at his store; his wife had selected a black silk dress ; Van Name asked the defendant whether if he let his wife have the dress he (the defendant) would pay for it. The defendant answered, if his wife bought the dress she must pay for it herself, and Van Name did not let her have the dress.

The evidence was slightly conflicting as to whether the bonnets in question were such as were usually worn or possessed by persons in similar conditions in life to the defendant's wife.

Miss Ogden sued the defendant before a justice, at Binghamton, in March, 1859, to recover the price of the winter bonnet which she had sold to his wife in December, 1858. The

defendant defended that suit. He interposed a general denial to the complaint, but was not sworn himself, and he did not call any witnesses. He was beaten in that suit upon the testimony of Miss Ogden and witnesses called by her, and the justice rendered a judgment in her favor, against the defendant, on the 26th day of March, 1849, for $10.50, besides costs. The defendant appealed from that judgment to the Broome county court, where it was reversed, and a judgment rendered against Miss Ogden, in his favor, on the 13th day of September, 1859, for $23.33 costs.

The defendant gave no evidence on the trial of this action to show that Miss Ogden knew, when she sold either of the bonnets to his wife, that he did not authorize his wife to purchase them ; unless the fact that he defended the suit that Miss Ogden brought against him for the price of the winter bonnet, showed she had such knowledge.

The defendant gave evidence on the trial of this action that tended to show Miss Ogden's assignment to the plaintiffs was fraudulent as against her creditors.

The plaintiffs recovered a judgment in this action, against the defendant, for $16.50 damages, besides costs. The Broome county court affirmed it ; and the defendant appealed from the judgment of the county court to this court.

*Solomon Judd,* for the plaintiffs.

*Stilson & Curran,* for the defendant.

*By the Court,* BALCOM, J. The defendant was not a creditor of Miss Ogden at the time she made the assignment to the plaintiffs. The assignment was made the 15th day of June, 1859, and the defendant did not recover his judgment for costs, in the county court, against Miss Ogden, until the 13th day of September in that year. The judgment being for costs only it cannot be said that Miss Ogden was a debtor of the defendant before it was actually rendered. The de-

Ogden *v.* Prentice.

fendant could not attack the assignment, in this action, on the ground that it was made by Miss Ogden with the intent to hinder, delay and defraud her creditors. He could attack it only by seizing some of the assigned property on execution, or by an action brought for that purpose. The assignment transferred to the plaintiffs the account Miss Ogden had against the defendant for the two bonnets in question. It was good as between the parties to it, even though fraudulent as against the creditors of Miss Ogden. (*Waterbury* v. *Westervelt*, 5 *Selden*, 598.) The plaintiffs therefore properly brought this action in their own names. (*Code*, § 111. 14 *Barb.* 533. 27 *id.* 178. 4 *Kern.* 555.) It was not necessary that the plaintiffs should give the defendant notice of the assignment by Miss Ogden to them, to prevent the defendant using his judgment against Miss Ogden as a set-off, or other defense in this action. It is true that section 112 of the code declares that the action by the assignee of a thing in action shall be without prejudice to any set-off or other defense existing at the time of, *or before notice of, the assignment;* and that this section qualifies section 150 of the code. (*See* 20 *N. Y. Rep.* 86, 98.) But, as section 112 has been construed by the court of appeals, in the case of *Beckwith* v. *The Union Bank of New York,* (5 *Seld.* 211,) it does not change the former rule as to the substantial rights of parties to an assignment, or of other persons who are affected thereby. The defendant did not do any act subsequent to the assignment by Miss Ogden to the plaintiffs that he would not have done if he had received notice thereof. He would have recovered his judgment against Miss Ogden if he had had notice of her assignment to the plaintiffs, precisely as he did without notice thereof. If he had paid Miss Ogden for the two bonnets, without notice of the assignment, he would have been protected by section 112 of the code. But the judgment he recovered against her for costs without notice of her assignment, is not a set-off or other defense in this action, within the meaning of that section of the code.

The law is that " the husband is bound to provide his wife with necessaries suitable to her situation and his condition in life ;° and if she contracts debts due for them during cohabitation, he is obliged to pay those debts ; but for anything beyond necessaries he is not chargeable. He is bound by her contracts for ordinary purchases, from a presumed assent on his part ; but if his dissent be previously made known, the presumption of his assent is rebutted. He may still be liable, though the seller would be obliged to show, at least, the absolute necessity of the purchase for her comfort." (2 *Kent's Com.* 9*th ed.* 133, 134.) " Necessaries, besides board and lodging, are such articles as comport with the wife's situation in life and her husband's fortune, and are usually worn or possessed by persons in similar conditions of life." (*Bright on Husband and Wife, vol.* 2, *p.* 7.) " What are to be considered necessaries in each particular case, is a point to be decided by the jury." (*Id. p.* 8.) I do not think the defense by the defendant, of the action brought against him by Miss Ogden, was notice to her that he would not permit his wife to purchase any necessary clothing for herself on his credit. His answer in that action was only a general denial; and it seems that his only position on the trial thereof was that Miss Ogden must establish a cause of action against him for the price of the winter bonnet. It is clear that she had no notice of the defendant's unwillingness to allow his wife to buy bonnets upon his credit, unless his defense of that action was such a notice. Now by considering this fact with the other evidence in the case, and applying the above mentioned rules of law thereto, the verdict of the jury, holding the defendant liable for the price of the two bonnets in question, is conclusive upon him.

But the defendant was liable to pay for the bonnets, for the reason, that he knew his wife had them and saw her wear them, without expressing any disapprobation. The law is that " the husband will be liable when the goods purchased by his wife, (to the payment for which he would not be lia-

ble,) come to her or his use with his knowledge and per-mission, or when he allows her to retain and enjoy them." (*Bright on Husband and Wife, vol. 2, p. 9.*)

If the justice committed any errors in admitting or reject-ing evidence on the trial, they were technical, and did not affect the merits—and were therefore properly disregarded by the county court. (*Code*, § 366.)

These views lead to the conclusion that the county court did right in affirming the judgment of the justice in this ac-tion ; and that this court should affirm the judgment of the county court, with costs.

Decision accordingly.

[BROOME GENERAL TERM, November 20, 1860. *Balcom, Campbell* and *Parker*, Justices.]