Nov. Term,
1860.

HUNT
v.
STANDART.

15   33|
d164 683|

HUNT and Others *v.* STANDART and Others.

In this State, promissory notes payable in a bank in this State, are alone placed upon the footing of bills of exchange, and governed by the law merchant.

The maker of a promissory note, made in one State and payable in another, will be held liable according to the law of the place where it is payable.

An indorser of a promissory note, undertakes that he will, upon certain implied conditions, pay the note; not at the place where the note is payable, but generally; and his contract is governed by the law of the place where the indorsement is made, and not by that of the place where the note is payable.

The contract of the drawer of a bill of exchange, as to its construction and legal effect, is to be governed by the law of the place where the bill is drawn; that of the acceptor, by the law of the place where the bill is payable.

It is not necessary that the plaintiff should make out a good cause of action against all of the defendants, in order to entitle him to a recovery against those as to whom a good cause of action is made out.

APPEAL from the *Marion* Circuit Court.

WORDEN, J.—Suit by *Standart* and others as indorsees, against a part of the appellants as makers, and against the others as indorsers, of a promissory note, set out as follows, viz:

Tuesday, *November* 27.

"$2,000.            *Indianapolis, March,* 23, 1858.

Two months after date we promise to pay to the order of *M. Wolf,* at the *Mercantile Bank, N. Y.,* two thousand dollars, value received, without any relief whatever from valuation or appraisement laws.

(Signed,) *Hunt & Andersons.*
(Indorsed,) *M. Wolf. John F. Hill.*"

Pleadings were filed, issues formed, and the cause tried by the Court; resulting in a finding and judgment for the plaintiffs against all the defendants for the amount of the note, and interest.

The note, it appears, was made and indorsed in *Indiana;* and the question is raised upon the pleadings and otherwise, by *Wolf* and *Hill,* the indorsers, whether their liability as such, is to be determined by the law of *Indiana,* where their indorsement was made, or by the law of *New York,* where the

Nov. Term,
1860.

HUNT
v.
STANDART.

note was payable. If by the law of *New York*, the judgment is right, as the proper steps seem to have been taken to hold the indorsers liable according to that law; such notes being there governed by the law merchant: but if, on the other hand, the law of *Indiana* is to determine the liability of the indorsers, they can not be held liable upon the facts shown; "due diligence" not having been used to collect the note of the makers, as required by our law, and no excuse appearing for the want of such diligence. In this State, promissory notes payable in a bank in this State, only, are placed upon the footing of bills of exchange, and governed by the law merchant.

We suppose it to be clear, that the liability of an indorser of a note, payable generally, without any place of payment being specified, is to be determined by the law of the State, or place, where the indorsement is made. *Yeatman* v. *Cullen*, 5 Blackf. 240; Edwards on Bills, &c., 186. But the question, whether this be the case in relation to a note made payable in another State than that in which it is indorsed, requires some further examination.

In the case of a note made in one State and payable in another, it is clear, by all the authorities, that the *maker* will be held liable according to the law of the place where it is payable; as that is the place where his contract is to be performed, and he is presumed to have contracted with reference to the law of that place. *Cox & Dick* v. *The United States*, 6 Peters, 172; Story on Prom. Notes, § 165. It does not follow, however, because the contract of the maker would be governed by the law of the place of payment, that the contract of the indorser would be governed by the same law. The maker binds himself to pay at the place named in the note for payment, and there his contract is to be performed. The indorser promises, upon certain conditions, which are not expressed in the contract of indorsement, but which are implied by law, that he will pay the note; but not that he will pay it at the place named in the note for payment. His promise is general, for the payment of the note upon the implied conditions; and such general promise, not specially to be performed elsewhere, is governed by the *lex loci con-*

*tractus*, which must determine the conditions upon which he is to be held liable.

The authorities establishing the proposition, that the contract of indorsement in such case, is governed by the law of the place where made, and not by that of the place where the note is payable, are clear, and to our minds, satisfactory. Some of them will be noted. In *Aymer* v. *Sheldon*, 12 Wend. 439, a bill of exchange was drawn at *St. Pierre*, *Martinique*, on a person at *Bordeaux*, in *France*, and indorsed by the payees, at the city of *New York*. It was held, that the contract of indorsement was governed by the law of *New York*, where the indorsement was made, and not by that of *France*, where the bill was payable.

The same doctrine was held in the case of *Allen* v. *The Merchant's Bank*, &c., 22 Wend. 215, 239. Again, in *Everett* v. *Vandryes*, 19 N. Y. (Ct. Ap.) 436, a bill had been drawn in *New Granada*, payable in *New York*, to one *Jimenes*, who had indorsed it in *New Granada*. The suit was by the holder against the drawer. The Court say, that the indorsement "is considered to be a separate contract, and the obligations of the parties to it are to be determined according to the law of the country where it was made; so that if this was a question between indorser and indorsee, we should have to resort to the laws of *New Granada*, to determine what obligations *Jimenes* assumed by indorsing the bill to the plaintiff."

In *Holbrook* v. *Vibbard*, 2 Scam. 465, a note was made in *New York*, payable in *Chicago*, and indorsed by the payees in *New York*. It was held that the liability of the indorsers must be determined by the law of *New York*, and not by that of *Illinois*. In *Lowry's adm'r* v. *The Western Bank of Georgia*, 7 Ala. R. N. S. 120, a note was made payable at the *Western Bank of Georgia*, and indorsed in *Alabama*. The contract of indorsement was held to be governed by the law of *Alabama*, and not that of *Georgia*. The Court say, "every indorser of a bill drawn in this State upon another, or upon a foreign country, enters into the contract with a view to the negotiation and payment of the bill there; but this does not, in any manner, bring his indorsement within the influence of

Nov. Term, 1860.

HUNT
v.
STANDART.

the laws which are local to the place where the bill is paya-ble." In *Dundas* v. *Bowler*, 3 McLean, 397, the same doctrine is maintained. There the Court quote with approbation, the following passage from Story's Conflict of Laws. "A bill of exchange was drawn in *Massachusetts* on *England*, and indorsed in *New York*; and again it was indorsed by the first indorsee in *Pennsylvania*, and by the second in *Maryland*. The bill was dishonored, and a question was made for what amount of damages the respective indorsers were liable. In *Massachusetts*, the damages on a protested foreign bill were ten per cent.; in *New York*, twenty, and in *Maryland*, fifteen; and it was held that each indorser was liable under the law of the place where the indorsement was made. Each indorsement was considered a new contract, governed by the *lex loci*; and each indorser bound himself to pay, should the bill be dishonored, the damages given by that law."

There are many other cases scattered through the books, to the same effect, but it is unnecessary to collect them here. There seems to be no distinction recognized, in respect to the liability of the indorser of a note or bill, between those payable in, and those payable out of the State or country where they are indorsed; and we think no distinction exists in principle. Here we might, and probably should, drop this branch of the case, were it not that there is a decision in our own reports, holding a contrary doctrine. The case alluded to is *Shanklin* v. *Cooper*, 8 Blackf. 41. There, a promissory note, payable in *New York*, had been indorsed in *Indiana*, as in the case at bar; and a question arose whether the contract of indorsement was governed by the law of *New York*, or by that of *Indiana*, as in the case at bar. The Court say in that case, "We consider the indorsement to be a contract which must be governed by the law of the place where the note is payable, without regard to the place where the indorsement was actually made. The maker, of the note before us, bound himself to pay it in *New York*, to the payee or order, and the payee, by the indorsement, directed him to pay it at the same place, to the indorsee. The indorser is, indeed, the drawer of a bill of exchange, in which the maker of the note is the acceptor, and the indorsee the payee; and it is payable where the note

Nov. Term, 1860.

HUNT
v.
STANDART.

is payable. The indorsement in the present case, therefore, if made in this State, stands on the same ground with a bill of exchange drawn here, and payable in *New York;* and there can be no doubt but that the contract of the drawer of such bill would be governed by the law of *New York.*" This reasoning, with great deference to the learning and ability of the distinguished Judge who delivered the opinion in that case, seems quite unsatisfactory and inconclusive. The proposition thus advanced, that the indorser of a note, "is, indeed,. the drawer of a bill of·exchange," is quite in harmony with the authorities, and commends itself to our judgment; but the position is useless in the argument, indeed it is suicidal, unless the proposition last advanced can be maintained, viz.: that the contract of the drawer of such bill would be governed by the law of *New York.* If this proposition can not be maintained, but if, on the contrary, the contract of the drawer of a bill, is governed by the law of the place where it is drawn, rather than by that of the place where it is payable, the argument advanced proves conclusively that the case was wrongly decided. The authorities must test this question. *Story* says (Conflict of Laws, § 360): " By the common law, the protest must be made at the time, in the manner, and by the persons prescribed in the place where the bill is payable. But as to the necessity of making a demand and protest, the circumstances under which notice may be required or dispensed with, these are incidents of the original contract, which are governed by the laws of the place where the bill is drawn. They constitute implied conditions upon which the liability of the drawer is to attach according to the *lex loci contractus*, and, if the bill is negotiated, the responsibility attaches upon each successive indorser according to the law of the place of his indorsement; for each indorser is treated as a new drawer."

Again: the same author, (Bills of Ex., § 131,) says: "In respect to foreign bills of exchange, they are generally, as to their validity, nature, interpretation and effect, governed by the law of the State or country, where the contract between the particular parties had its origin. The contract of the drawer is, as to the form, the nature, the obligation and the

effect thereof, governed by the law of the place where the bill is drawn, in regard to the payee and any subsequent holder. The contract of the indorser is governed by the law of the place where the indorsement is made, as to his indorsee and every subsequent holder." The same doctrine is laid down in Edwards on Bills, 185. In *Aymar* v. *Sheldon, supra,* the Court say: "That the nature and extent of the liabilities of the drawer or indorser are to be determined according to the law of the place where the bill is drawn or indorsement made, has been adjudged both here and in *England.*"

These, and numerous other authorities that might be cited, were it necessary, clearly establish the proposition that the contract of the drawer of a bill is, as to its construction and legal effect, to be governed by the law of the place where the bill is drawn, and not by that of the place where it is payable. Indeed, it can not be held otherwise consistently with legal principles which are thoroughly established. A contract to be performed at the place where it is executed, or generally, without naming another place for performance, is undoubtedly to be governed by the law of the place where made. Such is the character of the contract of the drawer of a bill, or the indorser of a note. The drawer of a bill here, payable in *New York,* promises, that upon the dishonor of the bill and notice to him, he will pay it, not at *New York,* but here, or generally. His contract is to be performed here. A little confusion has crept into some of the books, because of a failure to note the distinction between the contract of the drawer of a bill or the indorser of a note, and that of the acceptor of a bill or the maker of a note. The contract of the acceptor of a bill binds him to pay at the place of acceptance or place named for payment; and his contract, like that of the maker of a promissory note, is, therefore, governed by the law of the place of payment, that being the place where his contract is to be performed. Not so, however, with the drawer or indorser. Says *Mr. Justice Story:* "The acceptor agrees to pay in the place of acceptance or place fixed for payment; but upon his default, the drawer and indorser do not agree upon due protest and notice, to pay the like amount in the same place, but agree to pay the like amount in the

place where the bill was drawn or indorsed by them respect-
ively. Hence it is, that the notice to be given to each of
them must, and ought to be, given to each of them according
to the law of the place where he draws or indorses the bill,
as part of the obligations thereof. The drawer and indorser,
in effect, contract in the place where the bill is drawn or
indorsed, a conditional obligation, that is, if the bill is dis-
honored, and due notice is given to them of its dishonor,
according to the law of the place of their contract, they will
respectively pay the amount of the bill at that place. The
law of the place of acceptance or payment of the bill has
nothing to do with their contract." Story on Prom. Notes,
§ 339, note 3; Story on Bills, § 154. The proposition in
*Shanklin* v. *Cooper*, that the contract of the drawer of a
bill, drawn here, and payable in *New York*, is governed by
the law of *New York*, was, as we think, assumed without
sufficient consideration; and without observing the distinction
between the contract of the drawer of a bill, and that of the
acceptor thereof or the maker of a promissory note, in respect
to the place where the contract of each is to be performed.
The maker of a note, and the acceptor of a bill, as before
observed, contract with reference to the law of the place of
payment; and as that is the place where their contract is to
be performed, the law of that place governs it.

If the contract of the drawer of a bill, or the indorser of a
bill or note, be construed to bind him to pay the money, con-
ditionally, at the place named in the instrument for payment,
then, of course, his contract would be governed by the law
of the place of payment, because his contract would require
performance there. But this would overturn the whole cur-
rent of authorities, which hold that the law of the place where
a bill is drawn, or a note or bill is indorsed, governs the re-
spective contracts. But if, as is laid down by *Judge Story*,
and correctly as we think, the contract of the drawer or in-
dorser of a bill, or the indorser of a note, binds him con-
ditionally, to pay at the place where the bill is drawn or the
indorsement made, or generally, and not specially at the place
named in the instrument for payment; then the authorities
are reconcilable, and in entire harmony with those that hold

that the law of the place where a contract is to be performed governs it. And here we may observe that, as we think, *Denio, J.*, in delivering the opinion of the Court, in the case of *Everett* v. *Vendryes, supra*, inadvertently fell into an error, in a dictum found in the opinion. The suit, we have seen, was by the holder against the drawer of a bill which had been drawn in *New Granada*. It is said in the opinion: "The principal contract, the bill of exchange sued on, though made in *New Granada*, was addressed to a corporation, legally resident in *New York*, and was consequently payable there; and upon general principles, the laws of this State are to be resorted to in ascertaining its nature and interpretation, and the duties and liabilities which it created. This is too well established to require a reference to the books." Now, if the learned Judge had referred to the books, he would have seen that, upon general principles, the laws of *New York* had nothing to do in determining the nature and interpretation, the duties and liabilities, created by the contract of the drawer, who was sued in that case. Had the suit been against an acceptor of the bill, or the maker of a note payable in *New York*, the remark would have been strictly correct. The authority referred to in the opinion, upon another point, (*Aymar* v. *Sheldon*,) establishes clearly, that the contract of the drawer is to be governed by the law of the place where the bill is drawn.

The case of *Rothschild* v. *Currie*, which was relied upon in *Shanklin* v. *Cooper*, is probably not now regarded as authority in *England;* though we are not aware that it has been expressly overruled. In *Gibbs* v. *Freemont*, 20 Eng. Law and Eq. R. 555, it was referred to by *Alderson B.*, as of questionable authority, and the decision in that case would seem to be at variance with it. It was there held that a bill of exchange, drawn in *California* and payable in *Washington*, upon being dishonored, was entitled to draw interest at the rate of 25 per cent., the rate fixed by the laws of *California*, and not 6 per cent. merely, the rate at *Washington*.

The case of *Mix et al.* v. *The State Bank*, 13 Ind. R. 521, was like the present, and the decision therein is utterly incon-

sistent with *Shanklin* v. *Cooper*, and virtually overrules it, though the attention of the Court does not appear to have been called to it.

The Court below, in deciding the case at bar, was governed, undoubtedly, by that of *Shanklin* v. *Cooper;* but we are of opinion that it can not be reconciled with principle, or the general current of authorities, and that it should no longer be regarded as the law of this State.

The contract of indorsement, in the case at bar, being governed by the law of this State, it follows, from what has already been said, that the recovery against the indorsers can not be sustained.

The makers of the note complain, also, that the judgment against them is erroneous : *First,* because there was no joint cause of action shown against them, and *Wolf* and *Hill*, the indorsers. There was a good cause of action against the makers, and it was not necessary that the plaintiffs should have made out a good case as to all the defendants, in order to entitle them to recover against those as to whom they made out a good cause. *Mix* v. *The State Bank, supra.—Hubble et al.* v. *Wolf et al.*, at the present term.

*Second.* That the note produced does not sustain the allegations in the complaint as to the place of payment. We perceive no force in this objection.

*Third.* That the laws authorizing a judgment to be rendered without benefit of appraisement laws, according to the terms of the note, are unconstitutional and void. This question was considered at the last term, and decided against the ground taken by the appellants, and we do not feel called upon to examine the question again. See *Smith* v. *Doggett*, at the last term. 14 Ind. 442.

*Per Curiam.*—The judgment as to *Wolf* and *Hill*, the indorsers, is reversed, with costs made against them ; and as to the other defendants, it is affirmed, with costs.

*N. B. Taylor* for appellants.