LOUIS GUILLANDER *v.* JAMES HOWELL *et al.*

Personal property situated in New Jersey is subject to the local laws of that State, though the owner thereof reside in the State of New York.

A general assignment with preferences for the benefit of creditors, which is void under the laws of New Jersey, was made in the city of New York, of property then being situated in New Jersey. Subsequently such property was taken in New Jersey under a foreign attachment and sold: *Held,* that no title to such property in New Jersey passed by such assignment, and that the same was subject to such attachment proceedings.

ACTION for the detention and conversion of some boilers. A firm of Boardman & Co., residing and doing business in the city of New York, failed in December, 1857, and then in that city made a general assignment to the plaintiff, then a resident of said city, for the benefit of their creditors, giving preferences. The assignors then had some steam boilers in New Jersey, which had been manufactured for them by the defendants, and for which they were then indebted to the defendants. After the assignment, the defendants, residents of New Jersey, sold the steam boilers under proceedings commenced by foreign attachment against the assignors in New Jersey to satisfy said demand. Plaintiff demanded the boilers and defendants refused to deliver them. It appeared on the trial that an assignment giving preferences was void in New Jersey by the laws of that State. Verdict for defendants, affirmed at the General Term of the Supreme Court in the first district, and the plaintiff appeals.

*I. T. Williams,* for the appellant.

*E. R. Robinson,* for the respondents.

PECKHAM, J. The point is here distinctly presented, and it is the only point in the case, whether a sale in New York, legal there, of chattels situate in New Jersey is valid in the latter State as against creditors of the assignors residing there, when it is void by the laws thereof.

TIFFANY — VOL. VIII.     83

It is a general rule in regard to personal property, that it has no *situs*, but follows the person of the owner. It is, therefore, governed in its transfer and disposition by the law of the domicile of its owner, that is, by the law of the place where the sale is made, without regard to the law of the locality where it may be actually situated, so that if a sale be valid where made, it is valid everywhere. (Story's Confl. of Laws, §§ 379, 383, 384, &c.; *Warren* v. *Van Buskirk,* 13 Abbott's Pr. R., affirmed in this court in December, 1865 ; opinion by Justice POTTER). If that be the universal rule, the plaintiff in this case is of course entitled to recover.

But certain exceptions are stated in the books, which seem to be as well sustained as the rule itself. One exception is that such sale is not valid in another state, where the property is in fact situate, if it conflict with the interests of that state or its citizens.

Huberus lays down three maxims in reference to the transfer of property, and the effect of such transfer under different governments. 1. " The laws of every empire have force within the limits of that government, and are obligatory upon all within its bounds. 2. All persons within the limits of a government are considered as subjects, whether their residence is permanent or temporary. 3. By the courtesy of nations, whatever laws are carried into execution, within the limits of any government, are considered as having the same effect everywhere, so far as they do not occasion a prejudice to the rights of the other government or their citizens." Quoted in a note to 3 Dallas, 370.

Justice COWEN, when reporter, regarded the rule settled by the cases to be, " that the law of a place, where the contract is made or to be performed, is to govern as to the nature, validity, construction and effect of such contract, and, being valid in such place, it is to be considered valid and enforced everywhere, with the exception of cases in which the contract is immoral or unjust, or in which the enforcing it in a State would be injurious to the rights, the interest or or convenience of such State or its citizens," and cites many cases. (*Andrews* v. *Herriot,* 4 Cow., 510, in note at 511.).

Judge STORY, after stating that personal property, by the law of England, has no locality, but must be governed by the law of the domicile of its owner (Story's Confl. Laws, §§ 330, 331), and that foreign jurists, whom he cites, affirm the same doctrine, states the exception to the rule substantially as before expressed, as adjudged in different States in this country, and adds: "No one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its own territorial limits; nor can such a rule, made for the benefit of innocent purchasers and creditors, be deemed justly open to the reproach of being founded in a narrow or a selfish policy." (Id., § 390.)

What is injurious to the rights of the citizens where the property is situate, should be the subject of positive legislation, and not left to the discretion of the courts (id., § 390), and so are the authorities generally, in the several states, although the rule is sometimes more broadly expressed. (*Zipsey* v. *Thompson*, 1 Gray [Mass.], 243 ; *Varnum* v. *Camp*, 1 Green [N. J.], 326 ; *Ingraham* v. *Geyer*, 13 Mass., 145 ; *Le Roy* v. *Crowninshield*, 2 Mason, 157 ; *Fox* v. *Adams*, 5 Greenl. [Me.], 245 ; *Oliver* v. *Townes*, 14 Martin [La.], 97 ; 2 Cond. R. S. C. [La.], 606.) A well considered case. So in Virginia and Kentucky (says Chancellor KENT), under their statute laws, all real and personal property within the State are held to be bound by the attachment laws of the State, though the owner should execute an instrument in control of it at his domicile abroad. The rule of courtesy is held to be overruled by positive law." (2 Kent., 407; *Bishop* v. *Holcomb*, 10 Conn., 444.) Such, I believe, is the rule of law in all of the states where the point has been adjudicated, except, perhaps, South Carolina. The case referred to, as an authority in South Carolina, of *Green* v. *Mowry* (2 Bailey, 163), I have not been able to find, except a statement of its decision, in a note in 2 Kent., 408. Whether it applied to movables or to a chose in action is not stated.

The exception is fully recognized by Lord LOUGHBOROUGH, in *Sill* v. *Warwick* (1 H. Bl. at 693), and by the reporter in

giving the course of reasoning of the judges in the exchequer chamber in *Philips* v. *Hunter* (2 H. Bl. at p. 405.)

The two last were cases under the bankrupt laws, which it is now generally held in this country do not operate extraterritorially. But in the case at bar, it is a question of a conflict of laws. By the law of New York the sale is valid, by that of New Jersey it is void as to creditors. The law of this State is of course invalid as a mere law in New Jersey. It cannot operate there except by comity or courtesy, and as to property actually situate in New Jersey, that State has the conceded right to legislate; she may declare what alone shall transfer the title as against her citizens, creditors of the assignor. The property is within her exclusive jurisdiction: She protects and regulates it, though we may differ as to the policy or principles of her laws, we must admit their validity. In all the books it is conceded that real property must be transferred according to the law of its locality, because it is subject to the exclusive jurisdiction of the government of its locality, and because every legal remedy in regard to it must be sought there. This is not a case of priority of title, but of conflicting title. The law of New York holds this sale valid, as to all property which her laws can regulate. Her laws are of no force in New Jersey as laws, but by comity they are enforced as to a transfer of personal property valid here, except when injurious to her citizens there. There is not a decision in this State against this position, although there are some general dicta that would permit a different construction.

If the fact accorded with the fiction and the property were, in fact, within the State when the assignment was made, the title would pass, and it would not be liable to foreign attachment, though afterward found in New Jersey.

This court, in *Warren* v. *Van Buskirk, supra,* has held that this action would lie, if the defendants had been residents of our State when the assignment was made, and, therefore, subject to its laws. So are the decisions generally in other States. (*Bullock* v. *Taylor,* 16 Pick., 336.)

The Supreme Court in the third district at General Term, lately held that the exception did not extend to a debt due from a resident in Connecticut to a resident of this State—but that an assignment thereof valid here, though invalid there by her laws, ought to be held valid there also, even as against residents of Connecticut—because a debt is not a *corpus* capable of local position, but merely a *jus incorporate.* (*Thurman* v. *Stockwell,* decided in 1865.)

This is sustained by two other decisions of precisely the same character. In *Speed* v. *May* (17 Penn. State, 91) it was held that an assignment of a chose in action, due from a resident of Pennsylvania, legally made in Maryland, was valid in Pennsylvania, although the general assignment, which included the claim, was not recorded as required by the law of the latter State.

So in *Carkie* v. *Webster* (7 Wallace, jr., 131), Mr. Justice GRIER made a like decision. *Thurman* v. *Stockwell* made a distinction between debts and movables.

In *Carkie* v. *Webster,* assignee, the judge remarked "a debt is a mere incorporeal right. It has no situs and follows the person of the owner." But he did not base his decision on that distinction. In a very brief opinion, he seemed impliedly to admit that the law was against his decision as to personal property as between different nations, but he did "not think that the different States of this Union are to be regarded as a general thing in the relation of States foreign to each other." With deference, I think the doctrine on this subject to be well established the other way. (See cases before cited, and *Hayt* v. *Thompson,* 19 N. Y., 226; *Leinman* v. *The People,* 20 N. Y., 602.)

This court has recognized the distinction as to a situs between debts and movables. The latter being capable of having a situs, not the former, as they follow the domicile of the owner. (*People* v. *Commissioners of Taxes,* 23 N. Y., 224.)

It is insisted that great embarrassment will occur if a transfer of movables must be made according to the law of its situs, as it is not expected that persons will know the laws

of a foreign country. This difficulty is rather imaginary than real. The transfer is always held valid for all general purposes, with the exception before stated. There would seem to be no great injustice in holding that movables in one State, which have probably been a ground of their owners obtaining credit there, should not be transferred to another State to pay foreign debts, leaving local debts unpaid, unless it be done in accordance with the law of their locality.

I know of no decisions anywhere that would sustain this action. The cases before cited of *Thurman* v. *Stockwell, Speed* v. *May* and *Carkie* v. *Webster*, are, I think, sound law. A chose in action cannot surely be said to have any actual situs in the place where the debtor resides — as a general principal, it is payable at the residence of the creditor, if not expressed otherwise, and a tender to be good must be made to the creditor. There would seem, therefore, to be no sound basis for the debtor's State, to legislate exclusively as to the legality of a transfer of that debt, made by a foreign creditor. In such case, as in all others, where the property transferred does not actually lie within the jurisdiction of another government, a sale or a contract, valid where made, is valid everywhere.

The exception that the contract cannot be enforced if it be immoral or unjust, will and should be rarely, if ever, heeded between civilized nations.

Every civilized nation should be the sole and exclusive judge of what is moral and just in her legislation upon matters conceded to be within her exclusive jurisdiction.

This State has forbidden the taking of more than at the rate of seven per cent interest by the severest penalties. Lotteries, though once allowed for literary or religious purposes, are now declared a nuisance. So of slavery, once sustained but now prohibited in every State in the Union. Yet, a note given for slaves or lottery tickets, or usurious by our law, if made here, if valid by the laws of the country where made and payable, would be sustained here.

It would, I admit, be more harmonious with the general principle that personal property has no situs, and practically,

perhaps, more convenient to hold that a sale of movables, valid where made, should be valid everywhere.

But, in addition to the objections thereto already stated, suppose the laws of the States differ, as they sometimes do, as to what is personal and what is real property, could it be pretended that a sale here without deed of what our law calls personal, and the law of New Jersey declares to be real estate actually located there, would pass the title to the property there?

Whatever may be our views as to what the law ought to be in cases like the one at bar, the decisions harmonizing, too, with elementary writers, are too uniform and too numerous to warrant us in overruling them. Should we do so and hold the defendant responsible in this case, we should be in antagonism with nearly every State in the Union—if not with all, upon a question, too, which each State has the right to decide for itself and generally to enforce its decision, and as a general thing our decision the other way would remain a lifeless rule, without our having the least power to enforce it.

We think the judgment should be affirmed.

DAVIES, Ch. J., and PORTER, J., dissented; all the other judges concurring,

Judgment affirmed.