Johnson, J.
In the Common Pleas, Steiglitz, assignee of J. Smal, brought an action on an account of $968.75, for goods sold by Smal October 9, and November 3, 1866, on a credit of six months. Smal was a resident of, and doing business in the State of New York, and becoming insolvent, made an assignment of certain property, including this account, on the 11th of December, 1866, in trust for creditors, giving certain preferences, as allowed by the laws of that state.
The defendant, a citizen of Ohio, makes no formal objection to the plaintiff’s capacity to sue as such assignee. He makes no defense to a recovery of the amount claimed, but seeks to have set off a cross-demand which- he holds. This set-off is placed on two separate grounds.
1. He says that, after contracting this debt to Smal, he .purchased,'in due course of business, a promissory note on *357 Smal, which became due December 19,1866, for $1,806; that owing to the preferences given in the assignment, the estate will not pay exceeding ten per cent, to the general creditors; and he asks that so much of this note as is necessary be applied to cancel the plaintiff’s demand.
2. If this can not be done, he then, for the reason stated, asks for a reference to a master to inquire and state an account of the amount, pro rata, that Smal’s estate will pay, if settled up according to the principles of equality among creditors, and to have his pro rata share, as a creditor holding said note, offset against the plaintiff’s action.
The court charged that neither of said defenses constituted a valid cross-demand, and gave judgment for plaintiff, which was affirmed by the District Court.
This presents two questions :
1. As neither the account sued on nor the note set up was due, at the time of the assignment to plaintiff, could the defendant’s prospective cause of action be defeated as a set-off' by the assignment ?
2. As the assignment preferred creditors, but was valid by the law of New York, where made, will the courts of Ohio apply the principles of comity, and allow a recovery of the claim by the assignee under the circumstances stated in defendant’s answer ?
Neither cause of action was due at the date of the transfer. There is no connection between the two claims. They did not grow out of the same transaction, nor is the note in any way connected with the account. It is not a case where, by mutual dealings, they were each the debtor of the other, a case of mutual accounts between parties dealing with each other.
In such case there are strong equitable considerations for applying the principles of compensation.
It is not claimed that the assignment was tainted with bad faith, or that there was any purpose to defraud the defendant or defeat his cross-demand.
The plaintiff, as assignee for creditors, could acquire no greater title than Smal had when he made the assignment. *358 The account being a non-negotiable thing in action passed subject to all the defenses existing against it at that time against the assignor.
At common law such a chose in action could not be assigned so as to allow the assignee to sue in his own name. It must be in the name of the assignor for the use of the assignee. Whatever equities existed, whether by way of defeating the cause of action, or by counter-demand, could be interposed.
By section 25 of the code of civil procedure, the real party in interest, in this instance the assignee, must sue in his own name as trustee for the creditors.
In order that this change in the plaintiff in such cases should not cut off existing rights of defense, the 26th section provides that “ in case of the assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense now allowed.”
This section preserves to the debtor the same rights of defense as under the old practice.
No new rights were acquired by the debtor, nor were any additional burdens imposed on the right to transfer such demands.
These provisions of the code recognized the existing law, and adapted the new system of pleading to it. Myers v. Davis, 22 N. Y. 489; Martin v. Kunzmuller, 37 N. Y. 396; Pomeroy on Remedies, sec. 4.
The set-off allowed by the code, instead of being limited, as formerly, to liquidated demands, extends to any cause of action founded on contract or ascertained by the decision of the court. Whether the words “ now allowed,” in section 26, limits the set-off to the former, or includes the latter, does not arise in this case, as both are liquidated demands.
■ The plaintiff’ in error relies on the provisions o'f section 99 of the code, which provides, “ when cross-demands have existed under such circumstances, that if one had brought an action against the other, a counter-claim or set-off could have been set up, neither can be deprived of the benefit *359 thereof by the assignment or death of the other, but the two demands must be deemed compensated, as far as they equal each other.”
If the circumstances were such that, had Smal brought an action against Fuller, his set-off could have been set up, then Smal could not deprive Fuller of the benefit of his set-off by this assignment. But the circumstances were not such. Before the assignment Smal could bring no ac-' tion, for no right of action had accrued. Fuller had no cause of action that could be set up, because none had accrued.
On the 11th of December, 1866, neither had any demand within the meaning of section 99, that was not subject to be defeated by assignment or death.
It is well settled in such case, the death of one of the parties defeats after-accruing cross-demands.
Assignment or death are mentioned together, and the circumstances that will defeat the set-off in the one case will do so in the other. Granger v. Granger, 6 Ohio, 35; McDonald v. Black, 20 Ohio, 196.
The same rule applies in cases of insolvency as in case of death. Waterman on Set-off, sec. 19; Finnell v. Nesbitt, 16 B. Mon. 351.
We wish to limit these remarks to the case now before us, which is purely an independent cross-demand.
As to defenses which go to defeat the plaintiff’s right to recover on his cause of action, such as want of consideration, payment and the like, section 99 has nothing to do.
It is said that set-off is the creature of statute law, and was probably borrowed from the doctrine of compensation of the civil law. Compensation in case of mutual dealings was founded on a natural equity which permitted the reciprocal acquittal of mutual debts. The statutes of the different states differ as to the exact character of the set-off', and when it may be allowed in cases of assignment, and the bankrupt laws differ much from the general laws.
By 2 Geo. II., ch. 22, sec. 13, a set-off of mutual debts *360 was allowed. Under this statute, a set-off was called a “ cross debt.” Chitty on Con. 824.
The set-off allowed in Ohio, prior to the code, was defined by the act of February 19,1824, and was, like the English statute, limited to liquidated demands, or such as might be liquidated by computation.
Then, as well as now, it is clearly distinguishable from payment, recoupment, counter-claim, or any defense which went to defeat plaintiff’s right to recover.
It is an independent right of action, which is set up to cancel in whole or in part an admitted demand. Water’man on Set-off, ch. 1.
“ Until a demand becomes due the set-off or counterclaim may be defeated by the assignment by the opposite party of his claim, though the latter be iusolvent, and his demand has not been payable when assigned.” Waterman on Set-off', sec. 99.
Myers v. Davis, 22 N. Y. 489, was a case of an assignment simC ar to the one at bar. It is there said: “ The actual rights of the parties were not changed by the alteration of the practice allowing the real party in interest to sue. The defendant is entitled to the same defense as under ■the former practice, and the change effected by the code is simply as to the form in which the action is brought. The defendant’s difficulty is, that at the time of the assignment to the plaintiff in this case, the demand of the defendant had not matured, so as to be the subject of a set-.off, and when it had so matured, the demand against him had passed into the hands of the plaintiff, against whom he had no claim.”
In Martin v. Kunzmuller, 37 N. Y. 396, the same question was considered. It was said a set-off must be in proesenti at the time of the assignment; that if at that time the defendant had no present demand or debt due and payable, he had no offset; that he can not set up a debt due by him to the assignor — a debt of his matured afterward.” In Roberts v. Carter, 38 N. Y. 107, in a like case, it fvas said “ the assignment prevented any right of set-off- accruing.’' *361 Pomeroy on Remedies, 198 et seq. See also Beckwith v. Union Bank, 9 N. Y. 212; Williamson v. Brown, 2 Keyes, 486; Walker v. McKay, 2 Met. (Ky.) 294; Ogden v. Prentice, 33 Barb. 160; Willis v. Stewart, 3 Barb. 40; Adams v. Rodarmel, 19 Ind. 339.
It is said in argument that these decisions are made undei the New York statute of set-off, which is materially different from ours.
We have compared section 99 with the New York statute on the same point. It reads : “If the demand be such as might have been set off against such plaintiff or such assignee while the contract belonged to him.”
The meaning of this is the same as section 99, so far as the effect of an assignment on a set-off is concerned.
In each the test of whether the debtor preserves his set-off depends on whether he could have set it up before the assignment — that is, while the contract belonged to the assignor.
Whether we regard this as a question to be determined h* the statutes of New York or Ohio is not material, as they are substantially the same.
We conclude therefore that Smal, by the assignment before the maturity of either claim, prevented a set-off from accruing. The converse of this holding might work a more injurious preference than is complained of.
A number of cases have been cited to the effect that if the set-off accrue before suit brought, it can not be thus defeated. Iu New Hampshire the statute is: “ If there are mutual debts between the plaintiff and defendant at the time of the commencement of the action, one debt may be set off against the other.” The phraseology of different statutes gives rise to this diversity in the cases.
Again, many' cases'arising under the bankrupt laws adopt a broader rule.
The court,.in 4 Ohio St. 593, speaking of theise decisions, say: “ They have very little if any application to this case. These statutes have generally permitted a set-off of mutual credits, whether due or uot, and have therefore administered *362 a much broader equity than the ordinary law of set-off.” See notes to Rose v. Hart, 2 Smith Lead. Cases, 293.
This subject is fully reviewed, and numerous authorities cited, in the recent valuable treatise on the subject of Remedies and Remedial Rights, by Prof. Pomeroy, where the conclusion we have reached is fully supported.
II. The second defense is in the nature of an equitable set-off, based on the ground that it is against the public policy of the state to enforce an assignment which gives preferences, where the general creditors will be deprived of a large share of their claims.
The defendant, as such a creditor, asks that the principles of the Ohio law on the subject be applied, and to that end prays the court to ascertain what the estate would pay pro rata, and have the amount that he would thus be entitled to offset. He claims that the principles of comity between states does not require our courts to enforce the New York assignment when it injures a citizen of our own state.
If we are correct in our conclusions on the first point, the defendant has no valid set-off in this action, and no legal or equitable lien or charge against this account. It is not therefore a case where he as a citizen of Ohio is claiming rights under our laws as against claims arising under New York laws.
By the New York law the plaintiff’s right of recovery is complete, and by the Ohio law there is no set-off
If the plaintiff was acting under the insolvent law of this state, the defendant could not have his set-off^ and a court of equity would not grant him the relief he asks on such grounds, and thus interfere with the Probate Court in the administration of the estate.
The fact that he is a citizen of Ohio creates in his behalf no equities in fact. As such citizeh, he is entitled to the authority of its courts in support of his rights, founded upon its laws. A court of equity would not interfere with an insolvent court of our own state, unless the usual ground for equitable relief was made. The defendant has no equi *363 ties in this case that is not common to all general creditors, whether citizens of Ohio or not.
An assignment preferring credits was valid at common law. Lawrence et al. v. Davis, 3 McLean, 177.
The general rule of inter-state comity is that the law of the domicile of the owner of personal property and choses in action controls in their disposition by sale, devise, or assignment. Bank of Augusta v. Erle, 13 Pet. 591; Sortwell v. Jewett, 9 Ohio, 180; Story’s Conflict of Laws, secs. 379-884; Dundas v. Bowler, 3 McLean, 397.
In Sortwell v. Jewett it is said “ that as between citizens of the United States there is neither justice nor expediency in a rule of policy that a state should prefer the rights of its own citizens, and discriminate against citizens of other states. The natural right of the owner to dispose of his own property depends on no locality, and is subject to no restrictions, except in conformity to law. A compliance with these laws should avail equally the stranger as the eitizeu.” That was a case of an assignment in New York, giving preferences where the land assigned lying in Ohio had been seized in attachment after the assignment. The court held the Ohio attachment was subordinate to the rights of the assignee.
On the same point the Supreme Court of the United States say: “ The intimate union of these states as members of the same great political family — the deep and vital interests which bind them so closely together — should lead us to presume a greater degree of comity and friendship and kindness toward each other than we should be authorized to presume between foreign nations.”
State insolvent laws of other states, so far constitute a part of the contract, that a discharge under them, whete the contract was made and to be performed, is a bar, in Ohio, to any further action. Bank of Utica v. Card, 7 Ohio, pt. 2, p. 170.
Interest laws of other states, though in conflict with ours, are enforced — the rule being that, if the contract was valid *364 where made and to he performed, it would be sustained in Ohio. 1 Ohio St. 253.
So, a devise in Jamaica of personalty in Ohio is governed by the laws of that island. It is said, “As personal property has no locality, but accompanies the owner, the consequence necessarily is that the voluntary disposition, as well as distribution of it must depend exclusively on the law of the domicil.” McCune v. House, 8 Ohio, 144; Dundas v Bowler, 3 McLean, 397; Kanagha v. Taylor, 7 Ohio St. 134.
In Oliver v. Townes, 14 Martin (La.), 93, a leading case, an exception to this general rule is stated. It is there laid down “that when the laws of a foreign state clash with and interfere with the rights of citizens of the country where the parties to the contract seek to enforce it, as one or the other must give way, those prevailing where the relief is sought must have the preference.”
This exception, though not sanctioned by any case of authority in this state, is strongly supported both by reason and authority. Gunlaudet v. Hall, 35 N. Y. 657; Ingraham v. Parker, 13 Mass. 146; Story Conflict, sec. 000.
In all of these cases, there is a conflict of x’ights under the laws of the two states. Each party is asserting claims founded upon conflicting laws, when one or the other must give way. Oliver v. Townes was a conflict between a vendee of a vessel lying at New Orleans, under a sale made in Virginia, and valid there, and .an attaching creditor in Louisiana, where the sale was invalid. So, also, was the ease of Ingraham v. Parker. In that case, Parker, Jxxdge, says: “A citizen who has actually seized the debt by attachmexxt, befoi’e it was paid to -the assignee, would be protected in his lien. To give effect to the assignment, so as to intercept the lien obtained by the creditor under the laws of our own state, when, by the effect of that assignment, he would be deprived of all opportunity of participating with creditor’s in Pennsylvania in the proceeds of the debtox’’s effects, would be undue partiality toward foreign creditors.”
In Gunlaudet v. Hall, 35 N. Y. 657, a distinction is drawn between personal property actually located out of New *365 York and dioses-in action owing by citizens of other states. The former are held subject of seizure in attachment, so as to defeat the New York assignment; but the latter, having no actual situs, other than the domicil of the owner, can not be taken from the assignee by the laws of another state. Whether this distinction is sound, it is now immaterial to inquire.
In none of these cases, constituting what is called the exception to the general rule, have the courts refused .to apply the rules of comity, unless there was an actual conflict of rights growing out of a conflict of laws of the two states.
In this ease, there is no such conflict between the plaintiff’s rights, founded on the New York law, and the defendant’s, founded on Ohio law.
If, by attachment or otherwise, this account had been, seized, and a lien or charge established against the same under Ohio laws, by a citizen creditor of Smal, the question decided in 13 Mass. 146, would have been presented here for decision.
As it stands, the defendant having no valid claim to reach and appropriate this account to the payment of his claim against Smal, he must be governed by the general rules of comity in such cases.
The judgment is therefore affirmed.
Scott, Chief Judge, Day, Wright, and Ashburn, JJ., concurred.